Per Curiam:
This case was referred to Trial Commissioner William E. Day, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on December 9, 1965. Exceptions to the commissioner’s findings and recommended conclusion of law were filed by plaintiff. Defendant requested the court to adopt the opinion and findings with suggested modification and the case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Therefore, plaintiff is not entitled to recover and its petition is dismissed.
Commissioner Day’s opinion,* as modified by the court, is as follows:
This is a contract case. The controversy here centers around the payment provisions of three successive Air Force contracts for packing and crating, drayage and related services, of household goods of military personnel arriving at and departing from Maxwell Air Force Base, Alabama.
Prior to the performance of work under the contracts in suit, when personnel at Maxwell Air Force Base were transferred to duty elsewhere, the Government would contract *831 with, commercial movers to move the household goods of the person transferred, but any packing and crating would be accomplished by Government personnel in Government facilities. Beginning in 1954, with the invitation for bids on which the plaintiff was low bidder, the defendant requested bids on a unit price basis for packing and crating, drayage and other services.
By its acceptance of the plaintiff’s bid (there were six bidders) the defendant entered into contract AF 01(600)-625.[1] Item 1 related to packing and crating of loose household goods for shipment both domestic and overseas, with payment at a stated price per hundredweight and with payment based on gross weight. There is no issue as to work done by the plaintiff under Item 1. Item 2 related to dray-age of household goods from one point to another including such services as the preliminary packing at residence or storage point, tagging, inventorying, handling in or handling out, the receipt of incoming shipments, delivery, unpacking and placement services. Under this item, the plaintiff performed drayage and related services of household goods of a Government officer or employee who was transferred to duty to Maxwell Air Force Base, and similar services for an officer or employee who was transferred away from Maxwell Air Force Base.
The claims in suit relate to the latter group, because personnel who were moving to duty at Maxwell had goods which had already been crated and packed (by others than the plaintiff) which required drayage by the plaintiff. As to these, the plaintiff performed the drayage only and was paid at the unit price per hundredweight of goods as packed and crated, including the weight of the packaging and crating. As to the drayage of goods of personnel moving out of Maxwell, the plaintiff received a work order from the transportation officer; it sent its vans to the residence of the officer being transferred; the plaintiff’s employees would there inventory the contents of the residence to be moved, tag the various items, apply the necessary preliminary packing so that they could be loaded in the van and transported to the *832 plaintiff’s warehouse without damage. Breakables such as hhiria. and dishes would be packed in barrels. The contents of the residence were then loaded into the van and the van was driven to the plaintiff’s warehouse and there the goods were weighed. At this point, the work under Item 2 (dray-age) was complete, since handling into the warehouse was covered by Item 1 (packing and crating). The household goods would then be packed and crated by the plaintiff for which the plaintiff received payment under Item 1 of the contract. As to payment for the work of drayage under Item 2, the plaintiff says the contract language is clear and requires that it be paid under that item for the weight of everything loaded into the van and in addition, the weight of the packing and crating added at the warehouse and paid for under Item 1.
It is the plaintiff’s alternative contention that if the contract does not clearly call for payment under Item 2 as indicated above, then the contract language as to payment is ambiguous and the ambiguity must be resolved against the defendant, since it was the drafter of the language.
The defendant’s argument boils down to the proposition that the language of the contract under Item 2 (drayage) entitled the plaintiff to be paid only the total weight of the household goods placed in the van and transported by the plaintiff to its warehouse, excluding the weight of packing and crating thereafter added at the warehouse. It will be necessary to look at the language of the contract. Item 2 in pertinent part reads, as follows:
$ $ $ $ $
2. Dratage of household goods from one point to another including such services as the preliminary packing at residence or storage point, tagging, inventorying, handling in ON handling out? the receipt of incoming shipments, delivery, unpacking and placement at residence. Payment based on Gross Weight. * ❖ * * #
There followed a separate unit price for each of three zones (distances hauled) with a price stated separately for:
(1) Pick-ups of domestic shipments
(2) Delivery of domestic shipments
*833 (3) Pick-ups of overseas shipments or permanent storage
(4) Delivery of overseas shipments or permanent storage
The pertinent contract specifications provided as follows:
* i¡¡ ‡ * *
5. Scope op Contract : This contract covers packing, crating, drayage, unpacking, uncrating and allied services in connection with authorized movement of household goods and/or personal effects of military and civilian personnel of the Government. All labor and materials shall be furnished by the contractor.
ift % ij? ‡ #
c. Drayage. Contractor shall perform necessary pre-packing of household goods at quarters to insure safe transit to his plant, tagging, inventorying and draying to plant for packing and crating for outbound shipment. Items of glassware, chinaware and other small breakables shall be packed and sealed at owner’s quarters. Contractor shall receive inbound shipments into his plant and outhandle and dray to owner’s quarters, or point designated by the Commercial Officer, for unpacking and uncrating. Contractor shall place goods inside quarters as directed by the owner. Contractor shall remove all packing debris from delivery point. Empty containers,. except lift vans and transporters, become the possession of the contractor. Lift vans and transporters remain the property of the Government.
When free pick-up from or delivery to contractor’s plant is provided by the carrier, no drayage therefor shall be authorized. Mileage zones for drayage are based on distances from the city of Montgomery, Alabama, according to official highway mileage guide. Packed and crated weight shall govern payment according to zone rate applicable.
Although there was a prebid conference held prior to bidding on the first contract in suit, the results of such conference are not helpful in arriving at the intention of the parties as to payment for drayage, since there is no evidence that plaintiff had a representative at that conference. Likewise, the court is not aided by any evidence as to custom or usage in the trade as to the drayage payment provisions, as neither party offered any such evidence. The court is faced, therefore, with the bare words of the contract, the evidence *834 at the trial having been directed to the operations performed under the contract and the invoicing for work performed. It should here be said that 28 of the invoices submitted by the plaintiff in the early stages of the first contract were computed by the plaintiff according to its present theory — that the plaintiff should be paid for drayage on household goods outbound from Maxwell, based upon the weight which included the packing and crating after the goods had arrived at the plaintiff’s warehouse.
In support of its contention that the meaning is clear and unambiguous, the plaintiff points out that such clear meaning is underlined by the fact that in modifying the second contract to provide for the use of conex containers, the parties carefully spelled out a different measure of payment (net weight). It is noted, however, that this change was effected in May 1956, after the issue had been joined as to the meaning of gross weight. Both parties have expressed the familiar principle that ordinary words in a contract must be given their ordinary and popular meaning. Hongkong and Whampoa Dock Co. v. United States, 50 Ct. Cl. 213 (1915). In following this principle, it is fair to ask, what was the defendant to pay for under Item 2 — the outbound shipments? The answer in simple terms, is that it was to pay and the plaintiff could reasonably expect to be paid for the goods it carried or drayed. But the plaintiff directs the court to the language of the contract specifications (see finding 6) which states under paragraph 5 (Scope of Contract), and under the subparagraph relating to packing and crating services:
Packed and crated weights shall govern charges for payment under this contract.
This language is a departure from Item 2 of the contract itself, which states merely:
Payment based on Geoss Weight.
The fact of this difference in terms is enough to explain why the parties are before the court and would seem to rule out the plaintiff’s contention that the language is clear and unambiguous. It is necessary then to see if this difference in terms can be explained in terms of what services were to be *835 performed. It has already been seen that where inbound shipments were concerned (household goods of personnel moving into Maxwell), the plaintiff received into its warehouse from other carriers, the packed and crated goods. It then handled such goods by loading into its vans and unloading, uncrating, unpacking and placing in the owner’s residence. In these cases, the plaintiff had not done the packing and crating. For this service, the plaintiff, under Item 2 (drayage), billed the defendant for the entire weight of the goods handled by it, including the weight of the packing and crating. Since no question ever arose as to these shipments, this was an example of a payment under Item 2 for packed and crated weights of drayage. The plaintiff insists that according to the words of the contract specifications drafted by the defendant, the plaintiff’s interpretation as applied to the outbound shipments, if reasonable, should control. We then test the reasonableness of such construction.
The letter of the contract is to be controlled by its spirit and purpose. The terms employed are servante, and not masters, of an intent; they are to be interpreted so as to subserve, and not to subvert, such intent. 12 Am. Jur. § 236.
The defendant says that the plaintiff wants to be paid for the weight of goods which the plaintiff did not transport. And this is admitted by the plaintiff, which points to the additional services covered by the drayage provision and for which the plaintiff was not paid separately. As to the outbound shipments, these services included the preliminary packing at residence or storage point, tagging, inventorying and handling into the vans. These are all the usual services related to the movements of household goods.
The plaintiff asks the court to construe the contract so that the weight for which it should be paid under Item 2 on the outbound shipments (the weight of packing and crating added at its warehouse after the haul was completed) would be increased by 65 to 70 percent over the weight of goods actually carried in its vans. This construction does not seem to fall within the zone of reasonableness. See WPC Enterprises, Inc. v. United States, 163 Ct. Cl. 1, 323 F. 2d 874 (1963). I am of the opinion that the construction contended *836 for by the defendant is the more reasonable since that construction will effectuate the dominant purpose of the contract. Chicago and Northwestern Ry. Co. v. United States, 130 Ct. Cl. 633, 637, 127 F. Supp. 545 (1955), and cases cited. Particularly is that so when it is considered that under the plaintiff’s interpretation, the drayage could not be fully performed until after the goods had been unloaded at its warehouse, packed, crated and weighed, each of which was an Item 1, packing and crating function.
FINDINGS op Fact
1. Plaintiff is a domestic corporation, duly organized under the laws of the State of Texas. On February 17,1958, the name of plaintiff was duly changed from Howard Yan Lines, Inc., (hereinafter referred to as Howard) to Global Yan Lines, Inc. (hereinafter referred to as Global).
2. Between June 2,1954 and March 15, 1956, Howard entered into three written contracts with defendant, acting by and through the United States Air Force, for the furnishing of packing, crating, drayage, unpacking, uncrating and allied services related to the movement of household goods of Government personnel arriving at or departing from Maxwell Air Force Base, Alabama.
3. The contract numbers, dates of award and period of performance are as follows:
Contract Number Date oí Award Period of Performance
AP 01(600)-625. June 2, 1954_ July 1, 1954-Juno 30, 1955.
AF 01 (GOO) — 756-. April 25, 1955-July 1, 1955-June 30,1956.
AF 01(600)-922_ March 15, 1956. July 1, 1956-June 30,1957.
NOTE: Hereinafter each contract will be referred to by its last three digits — 625,766 or 922
4.In May 1954, plaintiff submitted its bid on Invitation for Bids (hereinafter called IFB) No. 01-600-54-62, issued by the Purchasing and Contracting Office, 3800th Air University Wing, Maxwell Air Force Base, Alabama, and was ultimately awarded contract 625. Issuance of IFB No. 01-600-54^62 represented a departure from prior contract policy at Maxwell, in that it was to be the first contract *837 which, would require the contractor to dray the goods to its warehouse and perform the packing and crating services. Heretofore, the Government had commercially contracted for drayage from the individual residences to the Government’s own warehouse, where it performed its own packing and crating. By the defendant’s acceptance of the plaintiff’s bid as submitted on the IFB, the first contract (625) was entered into by the parties. This procedure was also followed for the two subsequent contracts in issue (756 and 922).
5. Among other requirements, contracts 625, 756 and 922, as originally executed, contained the following identical provisions under Section I:
* =S * *
SeotioN I Amended
PACKING, ORATING, DRATAGE, & ALLIED SERVICES OVERSEAS & DOMESTIC HOUSEHOLD GOODS SECTION NO. I
1. Packing and Crating loose household goods for shipment including weighing, marking, banding, labeling, stencilling, handling, in, out and within warehouse and/or carrier’s equipment where free pick-up is provided by common carrier (excludes carload blocking and bracing). Payment based on Gross Weight. Attention invited to reuse of government crates and unpacking material.
a. Domestic (Other than Storage Depot)
b. Overseas & Storage Depot
2. Dratage of household goods from one point to another including such services as the preliminary packing at residence or storage point, tagging, inventorying, handling in OE handling out, the receipt of incoming shipments, delivery, unpacking and placement at residence. Payment based on GEOSS WEIGHT.
a. ZoneI (1-25 miles)
(1) Pick-ups of domestic shipments
(2) Delivery of domestic shipments
*838 (3) Pick-ups of overseas shipments or permanent storage
(4) Delivery of overseas shipments or permanent storage
b. ZoNE 2 (25-75 miles)
(1) Pick-ups of domestic shipments
(2) Delivery of domestic shipments
(3) Pick-ups of overseas shipments or permanent storage
(4) Delivery of overseas shipments or permanent storage
c. ZoNe3 (75-125 miles)
(1) Pick-ups of domestic shipments
(2) Delivery of domestic shipments
(3) Pick-ups of overseas shipments or permanent storage
(4) Delivery of overseas shipments or permanent storage
3. Other Dratage of crated household goods from one point to another where free pick-up not provided the government by common carrier (usually less carload railroad). Payment based on Gross Weight.
* * * # *
5. Stencilling, banding, weighing and handling when no packing and crating involved.
$ ‡ ‡ * Supplemental Agreement No. 2 on May 23, 1956, added a new subparagraph to Item 2 of the second contract (756). The new paragraph, designated 2 a(5) provided as follows:
H? ❖ i|i ❖
Item 2 a (5) Packing and crating of household goods in Cones boxes. Payment is based on net weight. All services described in paragraph 2 apply as written to paragraph 2 a(5), except that payment of Items 2 a(l) thru 2 a(4) is based on gross weight; whereas in paragraph 2 a (5) payment is based on net weight.
*839 A supplemental agreement for conex boxes was also added to the third contract (922) on December 14, 1956, which stated:
% # % #
Item l.d. Packing and crating of household goods in Conex boxes. Payment is based on gross weight less tare weight on conex boxes. The cost to be included excludes the cost of dray-age as in Item 2, page 4, which is according to pickup zone and also excludes Item 4, page 5, which is the loading of conex boxes on freight cars.
6. Under the technical provisions in contracts 625,756 and 922, as originally executed, which explained the services expected by the Government, the identical relevant provisions were expressed.
TECHNICAL PROVISIONS, SECTION I % # * % ❖
5. Scope op Contract : This contract covers packing, crating, drayage, unpacking, uncrating and allied services in connection with authorized movement of household goods and/or personal effects of military and civilian personnel of the Government. All labor and materials shall be furnished by the contractor.
❖ * ❖ % H*
b. Packing and Grating Services. These services shall include packing, wrapping, crating loose household goods, weighing, marking, banding, stenciling, labeling, and handling into carrier’s equipment when free pick-up is provided by the common carrier designated by the Commercial Transportation Officer to transport the shipment (for example, motor freight carriers and Railway Express Agency). Packed and crated weights shall govern charges for payment under this contract. Services in connection with blocking and bracing and loading and unloading of carloads and stop-over cars are outlined in provision e below.
These services shall conform to standards set forth below:
(1) Contractor shall comply with current technical orders and specifications on file in the Commercial Transportation Office for domestic and overseas packaging, packing and crating. *840 Model of overseas shipping box is available for inspection in the Commercial Transportation Office, Building 924, Maxwell Air Force Base, Alabama.
(2) liold baggage will not be crated as a rule, but will be banded and strapped. Generally, hold baggage containers will not exceed forty cubic feet in size and will consist of trunks, footlockers and other similar containers. Canvas, pasteboard or similar materials are considered inadequate and will be incased in containers of sturdy, tough material which will afford maximum protection at minimum weight.
(8) Containers may be re-used subject to specifications of this contract.
(4) Household goods destined to storage depots shall be moth-proofed and charge therefor shall be included in contract price, c. Drayage. Contractor shall perform necessary pre-packing of household goods at quarters to insure safe transit to his plant, tagging, inventorying and draying to plant for packing and crating for outbound shipment. Items of glassware, chinaware and other small breakables shall be packed and sealed at owner’s quarters. Contractor shall receive inbound shipments into his plant and outhandle and dray to owner’s quarters, or point designated by the Commercial Officer, for unpacking and uncrating. Contractor shall place goods inside quarters as directed by the owner. Contractor shall remove all packing debris from delivery point. Empty containers, except lift vans and transporters, become the possession of the contractor.
[N.B. _ At this point in contracts 756 and 922, the following sentence has been added:
“Lift vans and transporters remain the property of the Government.”]
When free pick-up from or delivery to contractor’s plant is provided by the carrier, no drayage therefor shall be authorized. Mileage zones for drayage are based on distances from the city of Montgomery, Alabama, according to official highway mileage guide. Packed and crated weight shall govern payment according to zone rate applicable.
Owners are responsible for the removal of a part-lot shipment prior to removal of the entire lot from contractor’s plant and charge therefor shall not be an obligation of the Government. Charges for extra pick-up *841 or delivery of same lot shall be paid by the owner unless justified in writing and approved by the Commercial Transportation Officer. When so approved, charges shall be included in contract price and not billed separately. Any special services not herein authorized (such as additional insurance, etc.) is payable by the owner.
d. Other Dr ay age. This service covers drayage on shipments when free pick-up or delivery is not provided by common carriers.
* * * * *
f. Stenciling, Banding, Weighing4 Marking and Dandling (when no packing and crating is involved). This service applies only for shipments incased completely in their own containers and when such containers constitute a complete individual shipment. Gross weight shall govern charges for payment.
# * # # *
i. Incoming Lift Vans ds Transporters. These containers are furnished by and are the property of the Government. When required, charges for loading, bracing, packing and unpacking shall be based on gross weight less tare weight of lift van or transporter.
* % * * *
8. WeighiNG and Marking: Each container (box, crate, barrel, etc.) shall be weighed individually and marked by the contractor at the time packing and crating services are performed, except as otherwise provided in this contract. The cost of weighing and marking shall be included in the contract price for packing and crating services. The contractor shall guarantee that the scales used for weighing are accurate and that their accuracy will be checked and certified by an inspector acceptable to the contracting officer once each six months. The cost of such inspections shall be borne by the contractor. The contractor shall guarantee that all weighing and marking will be accurately performed. Failure to satisfactorily meet these requirements shall be sufficient reason for termination of this contract by the Government. Necessary information and instructions relative to marking will be provided by the Commercial Transportation Officer, or his representative, for each order under this contract, such markings to be governed by applicable regulations.
*842 In contract 756, paragraph 8 was amended by Change No. 1 on December 15,1956 to read as follows:
***** Weight Certificates : All shipments weighing over 1000 lbs are required to be weighed before delivery to contractor’s plant and a certified public weight certificate obtained and forwarded to Transportation Officer along with invoice, packing Certificate and contractors weight certificate. All shipments weighing under 1000 lbs will require a contractor’s weight certificate.
Paragraph 8, as amended, was included in contract 922. In contracts 756 and 922 the provisions regarding weight were modified by a general provision which reads as follows: *****
* * * WEIGHING AND MARKING
Each container (box, crate, barrel, etc.) _ shall be weighed and marked by the Contractor at the time packing and crating services are performed, except as otherwise provided in this contract. The costs of weighing and marking are included in the contract price for items calling for packing and crating services. The Contractor guarantees that the scales used for weighing are accurate and that their accuracy will be checked and certified by an inspector acceptable to the Contracting Officer not less than once every 6 months. The costs of such inspections shall be borne by the Contractor. The Contractor also guarantees that all weighing and marking will be accurately performed. Failure to meet these requirements satisfactorily, as determined by the Contracting Officer, shall be sufficient reason for termination of the contract by the Government under the clause hereof entitled “Default.” Each container shall be suitably and legibly marked as designated by the Contracting Officer. Necessary information and instruction relative to markings required will be provided by the Contracting Officer for each order against this contract; such markings shall be governed by regulations applicable to the ordering agency.
* * * * *
7. Finally, the Service Schedule and Information Sections in contracts 625, 756 and 922 contained the following identical relevant provisions:
*843 7. Procedures: The following procedures are outlined for performance of this contract. Work orders will be furnished by the Commercial Transportation Officer for all services to be performed. Contractor shall call at the Commercial Transportation Office at least once a day for the purpose of picking up work orders and Government bills of lading and delivering packing and crating weight lists and freight bills. The contractor will be notified by the Commercial Transportation Officer as to supporting documents to be furnished for payment of services, a. Services Required.
(1) Contractor shall perform pick-up of household goods within forty-eight hours after receipt of work order. Pick-ups shall be made during the hours of 7 A.M. to 6 P.M. Monday through Friday and 7 A.M. to 11 A.M. on Saturday, or as otherwise specified by the owner or the Commercial Transportation Officer.
(2) Contractor shall complete packing and crating within following number of days after receipt of work order:
Hold baggage, pri [priority] baggage and personal baggage. 3 days
Domestic shipments_ 5 days
Overseas shipments directed to Port of Embarkation. 15 days
Shipments to storage depots_ 25 days
(3) Inbound shipments shall be delivered within forty-eight hours after receipt of shipment or notification of delivery address, whichever is later. Deliveries shall be made during the hours of 7 A.M. to 6 P.M. Monday through Friday and 7 A.M. to 11 A.M. on Saturday, or as otherwise specified by the owner or the Commercial Transportation Officer.
(4) After a shipment is packed and crated and Government bill of lading has been furnished by the Commercial Transportation Officer, the contractor shall contact the designated carrier and shipment shall be loaded immediately upon arrival of carrier’s equipment at contractor’s plant. Common carrier shall not be changed unless specific approval is given by the Commercial Transportation Officer.
(5) Drayage of shipments from terminals of railroads and other carriers shall be performed within the free time allowed. Any storage *844 accruing by noncompliance shall be the responsibility of the contractor. Carloads and stopover cars shall be loaded or unloaded within the free time allowed and any demurrage accruing shall be the responsibility of the contractor.
b. Complete and legible inventory, signed by owner and contractor or their agents, shall be prepared by the contractor at owner’s quarters and one copy shall be furnished the owner. When two separate shipments are scheduled for one owner, a separate inventory shall be prepared for each shipment, with destination shown thereon and verified by owner’s signature. Contractor shall be responsible for reconciling proper shipment with Government bill of lading destination.
c. Packing and crating weight list and other supporting documents shall be furnished the Commercial Transportation Officer not later than one day following completion of services as specified in 7 a (2). This list shall indicate in which container each item is packed. All shipments shall be marked as specified in work order.
d. All boxes shall contain sufficient and adequate interior bracing, packaging and packing materials to prevent damage to contents, but not to exceed 15 per cent of net weight.
e. Washing machines, refrigerators and pianos for storage or overseas shipment shall be packed separately as specified for overseas packing and crating in accordance with current regulations.
:Ji tfe % ❖ ❖
8. On March 18, 1955, prior to the expiration date of contract 625, a new IFB (No. 01-600-55-35) was issued and plaintiff was ultimately awarded the contract (756). It contained the previously-referred-to pertinent provisions.
9. On February 9, 1956, prior to the expiration date of contract 756, a new IFB (No. 01-600-56-98) was issued and plaintiff was ultimately awarded contract 922.
10. The home office of Howard (later Global) was at Dallas, Texas, but the invoices for the services performed under the contract were prepared locally in plaintiff’s Montgomery, Alabama, office.
11. By letter dated May 31,1954, from George T. Howard, President of plaintiff, to the Purchasing and Contracting Officer, Maxwell Air Force Base, Maxwell Field, Alabama, *845 Herbert E. Walker, Jr., Branch Manager of the Montgomery office was authorized to sign the contract and related documents in connection with IFB No. 01-600-54-62, which culminated into the first contract (625). Herbert E. Walker, Manager, did sign the first and the second contracts, acknowledged the receipt of Amendments 1 and 2 to the IFB on the first contract and Amendment 1 to the IFB on the second contract, and his name appeared on the invoices.
12. Change No. 1 to the second contract (756) was executed by C. E. Tyler, Manager, on December 15, 1955, on behalf of the plaintiff. The third contract (922) was signed on March 13, 1956, by C. E. Tyler, Manager, as the person authorized to sign the bid for the plaintiff. He also acknowledged receipt of Amendment I to the contract, dated February 28,1956. Supplemental agreements 1 and 2, dated November 1, 1956, and December 14, 1956, respectively, were executed by C. E. Tyler as Regional Manager.
13. At pretrial, counsel have agreed that the only issue in this case relates to what is meant by the words “gross weight” for purposes of payment, as they relate to the payment provisions of the contracts in suit, of the household goods from the owner’s residence to the plaintiff’s warehouse where such goods were packed and crated for later shipment.
The plaintiff contends that “gross weight” means the weight of the goods after packing and crating. The defendant contends that “gross weight” means the weight of the goods delivered to the plaintiff’s warehouse (from the owner’s residence) before packing and crating had been accomplished. In all cases for which claim is made, the plaintiff did, in fact, add packing and crating at the warehouse. The packing and crating was covered by Item 1 of the contract, however, and the plaintiff has been paid for the addition of the packing and crating. It was invoiced as a separate item (though on the same invoice) at the weight which included the weight of the packing and crating.
14. The plaintiff was furnished work orders for the contract work, and as each work order was performed the plaintiff submitted its invoice for payment. On all three contracts in suit, a total of about 3000 invoices was submitted by the plaintiff and paid by the defendant. During the *846 early stages of tbe first contract, plaintiff received payment for 28 invoices based upon tbe weight of the goods after tbe packing and crating weight was added by plaintiff at its warehouse. The remaining invoices were submitted and paid for on the weight of the drayed goods.
15. As to the disputed weight of goods drayed, the plaintiff would call with its van at the residence of the military person about to be moved. There, the plaintiff’s personnel would proceed to tag, inventory and prepack such items requiring prepacking (such as dishes and chinaware) and load the prepacked and other household goods into the van, and transport them to the plaintiff’s warehouse. At this point, the contents of the van were weighed. It is on the basis of this weight that the defendant contends that plaintiff should be paid under Item 2 (drayage) of the contract. However, the plaintiff rehandled the contents of the van referred to above, at its warehouse, for further shipment, both domestic and overseas. This required that all items of furniture and appliances be crated. Such crating was added by the plaintiff. A weight was then taken of everything that had been in the van as finally crated. It is on the basis of this weight that the plaintiff claims payment for drayage and related service from the military person’s residence to the plaintiff’s warehouse.
16. Plaintiff appealed from an administrative determination by defendant’s contracting officer, to the Armed Services Board of Contract Appeals (ASBCA No. 5714) and to the Comptroller General of the United States (claim No. Z528018 (6)-B-186869). The Comptroller General disallowed the claim March 5,1958, and reaffirmed that position in a letter dated August 5,1958. The Armed Services Board of Contract Appeals dismissed the appeal on or about January 21, 1960, and denied plaintiff’s motion for reconsideration on May 27,1960.
17. In its answer, defendant alleged the following affirmative defenses: (a) that all lawful and proper claims of the plaintiff under the contracts underlying the petition have been paid in full; (b) that plaintiff billed the defendant for the charges arising under each of the contracts; that plain *847 tiff certified that the charges were correct and just; that plaintiff’s charges were paid as billed; and plaintiff is barred and estopped from demanding additional payments under said contracts, and (c) that since plaintiff failed to make a timely appeal to the Secretary or his duly authorized representatives, as required under the “Disputes” clause of each applicable contract, and the ASBCA dismissed plaintiff’s appeal as untimely, the decision of the contracting officer is final, and therefore plaintiff has failed to state a claim upon which relief could be granted.
At the pretrial conference of May 1, 1963, defendant’s counsel waived all three affirmative defenses.
18. There is shown below for each of the three contracts, the total of the weight of the household goods outbound (household goods of personnel transferred from Maxwell Air Force Base) which was paid for by the defendant, and also there is shown the additional weight for which plaintiff sues as to each contract. This latter figure represents the weight of the packaging and crating added at the warehouse.
Contract Reference Weight paid for by the defendant Weight of packing and crating, in suit
626-, 1,873,712 1,193,773
756_. 1,505,475 1,086,662
922. 1,297,081 888,678
19. The parties have stipulated at pretrial, that if the plaintiff is entitled to recover under its theory, it is entitled to the following amounts under each contract:
AF 01 (600)-625_$8,939.08
AF 01 (600)-756_ 8,079.21
AF 01 (600)-922_17,861.25
CoNclusioN of Law
Upon the foregoing findings of fact and opinion, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and its petition is therefore dismissed.

The opinion, findings of fact and recommended conclusion of law are submitted! under the order of reference and Rule 57 (a).

 This was the first contract for the fiscal year beginning July. 1, 1,9.54. The other two contracts were for the two successive years.