William CROWLEY et al.

v.

The UNITED STATES.

No. 93–72.

United States Court of Claims.

Dec. 17, 1975.

Edward L. Merrigan, Washington, D. C., attorney of record, for plaintiffs; Smathers, Merrigan & Herlong, Washington, D. C., of counsel.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, for defendant.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and SKELTON, Judge.

## ON PLAINTIFFS' MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

This case concerns the applicability of the Veterans' Preference Act to the termination of the temporary promotions of veterans' preference eligibles permanently employed by the Federal Government. Plaintiffs William Crowley, James Falconer, John H. Miller, Donald P. Severance and Harold C. Storjohann, employees of the Department of the Navy at the Portsmouth Naval Shipyard (Shipyard), Portsmouth, New Hampshire, each received, between December 1967 and March 1968, at least one temporary promotion to the next higher grade position. In each case, the respective temporary promotions were subsequently terminated and, after unsuccessful appeals to the Civil Service Commission's (CSC) Board of Appeals and Review (BAR), each plaintiff was returned to his former permanent position. Plaintiffs contend that

when they were thus demoted, competing non-veteran employees, who had received similar temporary promotions subsequent to plaintiffs', were either retained or made permanent in the higher grade positions, in violation of plaintiffs' rights under the Veterans' Preference Act and the Civil Service Commission regulations promulgated thereunder. Plaintiffs, who have combined their cases inasmuch as they present substantially the same basic issues, seek back pay and permanent reinstatement to the higher level positions.

The three principal questions presented by the parties' cross-motions for summary judgment are whether plaintiffs' rights under the Veterans' Preference Act were violated or abridged by (1) defendant's promotion of competing non-veterans (or employees with fewer "job retention rights") over plaintiffs; (2) defendant's retention of non-veteran temporary promotees over plaintiffs; or (3) defendant's termination of plaintiffs' temporary promotions. As to the first two questions, we have concluded that the Act and applicable regulations guarantee veteran temporary promotees neither permanent promotions to nor retention rights in higher level Government positions. While the termination of the temporary promotions did, at the time plaintiffs were respectively promoted, constitute an "adverse action" within the meaning of 5 U.S.C. § 7512 and 5 C.F.R. Pt. 752, we hold that plaintiffs have failed to establish that such actions were arbitrary, capricious or otherwise not "for such cause as will promote the efficiency of the service," as that standard has been construed by this and other courts. Accordingly, we deny plaintiffs' motion for summary judgment and grant defendant's cross-motion.

The facts essential to our decision are not in dispute. However, inasmuch as the underlying circumstances differ somewhat from one claim to another, we set forth the facts of each plaintiff's claim individually.

### 1. *Plaintiff William C. Crowley*

Plaintiff Crowley was temporarily promoted on March 10, 1968, from the position of Production Shop Planner Pipefitter to that of Foreman (Leadingman) Pipefitter. Prior thereto, on February 23, 1968, he signed a standard form proposed temporary promotion agreement, stating thereon: "I understand and agree to the conditions of my proposed temporary promotion." The agreement, substantially identical to those signed by each of the other plaintiffs set forth the purpose, conditions and expected duration of the temporary promotion as follows:

a. *Position:* Foreman Pipefitter— Shop 56

b. *Temporary—Not to Exceed:* NTE 30 days. This temporary promotion is expected to continue for the period shown above. It may, however, be terminated earlier whenever the temporary condition for which it was made no longer exists, or whenever, for other reasons, it is determined to be in the best interest of the Shipyard to do so.

c. *Why this Promotion is Temporary:* To replace Mr. Philip J. Theberge who is on extended sick leave.

d. *Termination of Temporary Promotion:* You will return to your present position and pay step whenever the basis for your temporary promotion no longer exists, or whenever other reasons occur which warrant terminating your temporary promotion. Your promotion may be terminated at any time during the first 90 days. If it continues for more than 90 days, you will be notified of the proposed termination, and the reason for it, at least 30 days before its effective date.

After the permanent foreman's return, several extensions of plaintiff Crowley's temporary promotion were made in order "[t]o provide supervision for personnel borrowed from other activities during a peak workload" (March 29, 1968, NTE May 25, 1968), and " * * * also

to provide additional supervision coverage from the SSB(n)619" (May 15, 1968, NTE July 13, 1968; NTE August 24, 1968). In each instance, the reasons for the temporary promotion, and the conditions under which it was being offered, were clearly set forth in a standard form memorandum agreement signed by plaintiff.

On November 4, 1968, plaintiff Crowley was issued an advance notice of termination for the stated reason that "personnel borrowed from other activities are being returned to home yards and there is no longer need for additional supervisory coverage on SSB(n)619." The notice also stated that "although this termination is technically classified as an 'adverse action,' it is not in any way a reflection on your performance." Plaintiff was returned to his regular permanent position on November 10, 1968.

Plaintiff Crowley appealed his termination on the ground, among other things, that at the time thereof, defendant retained in the higher level position the following competing non-veteran employees who, in several cases, had allegedly been temporarily promoted subsequent to his temporary promotion: [1]

In a decision dated July 10, 1969, the CSC's Boston Regional Office found that plaintiff Crowley's return to the lower grade was warranted and was for such cause as would promote the efficiency of the Service. On November 25, 1969, however, the BAR reversed this decision, finding that plaintiff "was not returned to his former position as a result of the termination of the terms of his agreement but [the return] was also due to the making of additional permanent promotions in the meantime." Plaintiff was thereupon restored to the Foreman (Leadingman) Pipefitter position retroactively to November 10, 1968.

On February 2, 1970, plaintiff Crowley received a second notice of termination,

---

[1] This list is the subject of some dispute between the parties. In *Defendant's Reply to Plaintiffs' Argument Set Forth in Plaintiffs' Motion for Leave to File Exhibits, Etc. (Defendant's Reply)*, at 2, filed Sept. 8, 1975, defendant alleges, for example, that one *Elwood D. Cook* had previously held the permanent position of Foreman (Leadingman) Pipefitter from Aug. 27, 1961 to March 31, 1963, and the temporary Leadingman position from Feb. 16, 1964 to April 26, 1964. Under these circumstances, according to defendant, the Federal Personnel Manual (FPM), Ch. 335 (1968), did not require that Mr. Cook compete for repromotion to the position previously held on a permanent basis. He was, instead, merely reinstated to that position by conversion from CSC Certificate 118 as a repromotion candidate. Plaintiff disputes this assertion, claiming that Cook's earlier service entitled him only to "consideration," not absolute preference. *Plaintiff's Response to Document Filed by Government on September 8, 1975 By Leave of Court (Plaintiffs' Response)*, at 5, filed Oct. 3, 1975.

Also in its *Reply*, at 2–3, defendant alleges that, although *Wylie Brewster* was temporarily promoted on April 7, 1968, that promotion, after several extensions, was terminated on Aug. 10, 1968. On Aug. 11, 1968, Mr. Brewster was temporarily promoted to the position of Foreman *Refrigeration and Air-Conditioning Mechanic,* which promotion was converted ·to permanent on Sept. 21, 1969. This position,

according to defendant, is neither in the same competitive area nor at the same retention level as that of plaintiff Crowley.

Finally, defendant alleges that *Walter M. Hellen* in fact declined the temporary promotion which plaintiff lists as effective Feb. 22, 1970. *Defendant's Reply,* at 3. Instead, according to defendant, when plaintiff Crowley was returned for the second and final time, on March 8, 1970, to his lower permanent grade, Mr. Hellen, too, was serving as a Pipefitter. Subsequently, on June 28, 1970, Mr. Hellen was temporarily promoted to Foreman, and then returned to Pipefitter on Sept. 20, 1970. A second temporary promotion, not made until November 14, 1971, was ultimately converted to permanent on February 9, 1972. Thus, defendant argues, even assuming *arguendo,* that reduction-in-force procedures were applicable in February 1970, when plaintiff Crowley received his second notice of termination neither Mr. Brewster nor Mr. Hellen would have been included in the appropriate retention register, since neither employee was serving as a Foreman Pipefitter at that time.

| Employee[1] | Retention Status | Date of Temporary Promotion |
|---|---|---|
| Walter M. Hellen .... | 1B | 2/22/70 |
| Wylie E. Brewster ... | 1B | 4/ 7/68 |
| Elwood D. Cook ..... | 1B | 3/10/68 |
| Plaintiff Crowley .... | 1A | 3/10/68 |
| Charles R. Morris .... | 1B | 4/ 2/67 |
| George A. Black ..... | 1B | 4/ 2/67 |
| Robert E. Grodan ... | 1B | 4/ 2/67 |

this time pursuant to a reduction in force at the Shipyard in the Foreman (Leadingman) Pipefitter level. Plaintiff was thereupon returned to his permanent position on March 8, 1970. Upon appeal, the CSC's Boston Regional Office, in a decision dated April 8, 1970, reversed the Shipyard's action for reasons similar to those stated by the BAR in its decision concerning plaintiff's termination.[2] On August 21, 1970, however, the BAR reversed the Regional Office decision, and held that the agency action was "for such cause as will promote the efficiency of the service."

## 2. *Plaintiff James Falconer*

Plaintiff Falconer was temporarily promoted on December 31, 1967,[3] from the position of Foreman (Leadingman) Pipefitter to that of General Foreman, Pipefitter, as a result of a Navy competitive promotion examination for the higher level position. Prior thereto, on December 26, 1967, he signed a standard form memorandum agreement similar to those signed by the other plaintiffs, stating thereon that "I understand and agree to the conditions of my proposed temporary promotion as explained above." The reason for the temporary promotion, as explained therein, was "because of the increased emphasis on third-shift work and to coordinate the efforts of the four Foremen on that shift and their employees." After several extensions for substantially the same reasons as the initial temporary promotion, plaintiff Falconer's promotion was terminated, effective November 3, 1968, and he was returned to his former permanent position. Plaintiff Falconer appealed the termination primarily on the ground that, at the time thereof, defendant retained and later permanently promoted a Mr. Trafton T. Sprowl, another veteran employee who had been selected for a temporary promotion to the General Foreman position from the same competitive promotion register, but who had fewer years of service than plaintiff.[4]

The Regional Office, in a decision dated July 10, 1969, sustained defendant's action. On November 28, 1969, the BAR affirmed the Office's decision on the grounds that (1) when plaintiff received his temporary promotion on December 31, 1967, Mr. Sprowl had already been serving in the higher level position on a temporary basis since February 12, 1967, which position was thereafter converted to permanent on February 25, 1968; (2) the increased work emphasis was tapering off so that a need for additional personnel as General Foremen on a temporary basis had ceased; and (3) plaintiff's termination was properly effected in accordance with defendant's established procedure of selecting first for demotion that person who was last (i. e., most recently) temporarily promoted.

## 3. *Plaintiff John H. Miller*

Plaintiff Miller, after selection from an established promotion register, was temporarily promoted on April 14, 1968, from the position of Pipefitter to that of Foreman (Leadingman) Pipefitter. Prior thereto, on April 5, 1968, he signed a standard form memorandum agreement, similar to those signed by the other

---

**2.** The decision of the Regional Office was also, and primarily based on the BAR decision of Feb. 2, 1970, in the case of *Kenneth E. Thompson,* which the Office considered controlling in plaintiff Crowley's case. See our discussion of the *Thompson* case in Part IV of this opinion, *infra.*

**3.** Plaintiff Falconer appears to have received an earlier temporary promotion to General Foreman on July 16, 1967, which was subsequently terminated on November 19, 1967, without appeal. *Plaintiff's Response,* at 16; *Defendant's Reply,* at 6.

**4.** In addition to Mr. Sprowl, plaintiffs also cite Mr. Andette and Mr. Sullivan as non-veteran personnel who were retained at the time of plaintiff Falconer's demotion. According to defendant, however, Mr. Andette was permanently promoted to the General Foreman position on January 29, 1967, 5 months before plaintiff's first temporary promotion and 11 months before his second (on December 31, 1967). Similarly, according to defendant, Mr. Sullivan was permanently promoted to General Foreman on March 26, 1967, 3 months before plaintiff's temporary promotion, and 9 months before his second temporary promotion. *Defendant's Reply,* at 6.

plaintiffs, which stated that the purpose of the temporary promotion was "[t]o replace Raymond Plourde, regular Foreman Pipefitter, who is on extended sick leave." After an extension, NTE September 5, 1968, for the same purpose as the initial promotion, plaintiff received a notice of proposed termination for the stated reason that Mr. Plourde had retired and a permanent replacement had been selected from the register of eligibles resulting from a Navy Merit Promotion examination. Plaintiff's temporary promotion was thereupon terminated, effective November 3, 1968.

Plaintiff appealed the termination on the grounds that, at the time thereof, defendant retained in the higher level position certain competing non-veteran employees who, in several cases, had allegedly been temporarily promoted subsequent to plaintiff.[5] The Regional Office, in a decision dated October 10, 1969, sustained defendant's action. On January 22, 1970, the BAR affirmed the Office's decision, stating that "[w]hen the sole reason for the temporary promotion ceased to exist (Mr. Plourde's absence * * * because of sickness) by virtue of his [i. e., Mr. Plourde's] retirement, it is obvious that the express condition necessitating the temporary promotion was fulfilled."

### 4. *Plaintiff Donald P. Severance*

Plaintiff Severance was temporarily promoted on December 17, 1967, from the position of Pipefitter to that of Foreman (Leadingman) Pipefitter. He served in the higher level position until October 5, 1968, under three consecutive extensions, for each of which he signed the standard form memorandum agreement setting forth the respective reasons for the temporary promotions as (1) "to carry out the supervisory requirements on the second shift for the workload on the SS(n)597" (December 8, 1967); (2) "[c]ontinued shift emphasis on the AGSS555, SS(n) 597, and SS(N)646" (January 8, 1968); and (3) "[b]ecause of continued emphasis" on the above-listed and other specified projects (March 8, 1968). Thereafter, plaintiff's temporary promotion was terminated, effective October 6, 1968, and he was returned to his former permanent position. Plaintiff thereupon appealed the termination on the ground that, at the time thereof, defendant retained in the higher level position certain competing non-veteran employees who, in several cases, had allegedly been temporarily promoted subsequent to plaintiff.[6] The Regional Office, in a decision dated October 10, 1969, sustained defendant's action. On March 2, 1970, the BAR affirmed this decision.

### 5. *Plaintiff Harold C. Storjohann*

Plaintiff Storjohann was temporarily promoted on September 14, 1967, from the position of Machinist (Marine) to that of Foreman Machinist (Marine), in order "[t]o replace," according to the standard form agreement, "the Foreman Machinist (Marine) who will be temporarily promoted to Foreman Machinist (Marine) I." After two extensions for the purposes of providing "supervisory coverage of SSB(N) 619 refueling operation" (April 1, 1968) and "[t]o accomplish a temporary heavy workload as a result of work on" specified projects (July 18, 1968), the temporary promotion was terminated pursuant to a reduction in force at the Foreman Machinist level, and plaintiff was returned to his former permanent position, effective July 19, 1969.

Plaintiff appealed the termination on the ground that at the time thereof, defendant retained in the higher level position certain competing temporarily pro-

---

5. Plaintiff Miller's contentions regarding competing non-veterans, like plaintiff Crowley's, primarily focus on Messrs. Brewster, Cook, Morris, and Hellen. As to the parties' factual dispute over the status of these individuals, see note 1, *supra,* and accompanying text.

6. Plaintiff Severance's contentions regarding competing non-veterans, like plaintiff Crowley's and plaintiff Miller's, primarily focus on Messrs. Brewster, Cook, Morris, Black and Hellen. As to the parties' factual dispute over the status of these individuals, see note 1, *supra,* and accompanying text.

moted employees, with no or fewer veterans' preference retention credits, who, in several cases, had allegedly been temporarily promoted subsequent to plaintiff.[7] The Regional Office, in a decision dated January 16, 1970, sustained defendant's action. On April 7, 1970, the BAR affirmed the Office's decision on the grounds that (1) the increased workload which necessitated plaintiff's temporary promotion had ceased; and (2) the CSC regulations mandate the return of all temporary promotees to their former permanent positions before any competing permanent employees may be released (i. e., displaced by higher-standing permanent employees) pursuant to a reduction in force.

## I

### The Scope of the Veterans' Preference Act

There can be no dispute that the granting of preference to veterans in certain aspects of public employment is an established principle in both State and Federal practice. *See, e. g., Fredrick v. United States,* 507 F.2d 1264, 1268, 205 Ct.Cl. 791, 799 (1974); *White v. Gates,* 102 U.S.App.D.C. 346, 253 F.2d 868, 869, *cert. denied,* 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed.2d 1147 (1958); *Feinerman v. Jones,* 356 F.Supp. 252, 259 (M.D.Pa.1973); *Koelfgen v. Jackson,* 355 F.Supp. 243, 251–52 (D.Minn.1972), *aff'd mem.,* 410 U.S. 976, 93 S.Ct. 1502, 36 L.Ed.2d 173 (1973). Thus, as plaintiffs correctly point out, the Veterans' Preference Act of 1944, 58 Stat. 387 (codified in scattered sections of Title 5, United States Code), among other things, accords veterans special point and service credit preferences in civil service entrance and other examinations, 5 U.S.C. § 3311; waives age and physical requirements, wherever possible, for veterans seeking Government appointments and promotions, *id.* §§ 3312, 3363; affords veterans' preference eligibles special procedural and substantive safeguards in removal and other adverse action proceedings, *id.* § 7512; and grants such eligibles certain preferential rights in reduction-in-force situations. *Id.* § 3501 *et seq.*

■ That the Veterans' Preference Act reflects Congress' will, as stated in *Johnson v. Robison,* 415 U.S. 361, 382, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), to encourage and reward military service to the Nation, does not, however, render limitless the rights and benefits which the Act furnishes. Nor does the Act, as plaintiffs would apparently have us believe, cloak veterans with any "penumbral rights;" its provisions are necessarily specific, and for plaintiffs to benefit therefrom they must show themselves to be clearly within the intended ambit of

---

**7.** Plaintiff Storjohann's contentions regarding competing temporarily promoted non-veterans primarily focus on Messrs. Leo Redden, Leon R. Goodwin, David F. Vachon, Jean Beauchemin, and Donald Corporan. Mr. Redden and Mr. Goodwin, according to plaintiff's own submissions, however, received their temporary promotions subsequent to plaintiff's *initial* temporary promotion (September 14, 1967), which was subsequently terminated without appeal, effective February 25, 1968. When plaintiff received his *second* temporary promotion on April 7, 1968, Mr. Redden and Mr. Goodwin had been serving continuously in the higher level positions for 4 months and 5 months, respectively. Mr. Redden's temporary promotion was converted to permanent on December 1, 1968; Mr. Goodwin was permanently promoted on April 21, 1968.

In addition, plaintiff alleges that he has 18 years' longer service than Mr. Redden, and 21 years' longer service than Mr. Vachon. Defendant counters, however, that from 1938 to 1959, plaintiff in fact served in the regular Navy, another career from which he already receives retirement benefits, and that his tenure in the civil service began only in June of 1959, whereas Mr. Redden's service credits actually date back to 1957, and Mr. Vachon's to 1960. Defendant also argues that none of the above-listed employees was temporarily promoted from a competitive promotion register established *after* the one on which plaintiff first qualified (i. e., that established in August 1967, and in effect through November 1969). Thus, while Mr. Vachon was temporarily promoted after plaintiff, *both* promotions were from the *same* register. In light of our reading of the *Thompson* decision, among other reasons, we find this last argument dispositive of most of the factual questions here presented. *See* Part IV of this opinion, *infra.*

those provisions. We noted as much in *Powers v. United States,* 169 Ct.Cl. 626, 630 (1965), where, in upholding the Government's removal without hearing of a veteran career-conditional employee serving a one-year probationary period, we stated:

> This court is unable to accept the assertion of plaintiff that, on the basis of a general policy of the Government (and without regard to specific statutes and regulations), a veteran is entitled to special treatment, including a hearing. Since plaintiff has not shown any failure of the Government to comply with any applicable statute or regulation, we must conclude that the removal of plaintiff involved no violation of his procedural rights.

Although the briefs and submissions of both parties have exhaustively detailed the facts and circumstances underlying plaintiffs' claims, they have been of considerably less assistance in resolving the legal issues which we are called upon to decide. Nevertheless, three possible questions would appear to be presented by plaintiffs' case: (1) *the promotion question:* whether defendant's failure to permanently promote plaintiffs, before or about the time it permanently promoted certain non-veterans, violated the Veterans' Preference Act and the regulations, or was otherwise arbitrary and capricious; (2) *the retention preference question:* whether defendant's failure to retain plaintiffs in their temporary positions, while retaining others with fewer or no retention preference rights, violated the Act and regulations, or was otherwise arbitrary and capricious; and (3) *the adverse action question:* whether defendant's terminations of the temporary promotions of plaintiffs, insofar as they constituted "adverse actions" within the meaning of 5 U.S.C. § 7512 and 5 C.F.R. Pt. 752, were proper and warranted as being "for such cause as will promote the efficiency of the service." The opinion which follows will address each of these questions in the order listed.

## II

### *The Promotion Question*

■■■ In setting forth the circumstances underlying their respective claims, plaintiffs describe repeated instances wherein defendant passed over one or another of the plaintiffs in selecting individuals for promotion. Addressing plaintiff Falconer's claim, for example, plaintiffs state that "although there have been numerous openings in the position of General Foreman Pipefitter during this period, defendant has arbitrarily and capriciously selected other competing employees possessed of either no Veterans' Preference rights or less [sic] Veterans' Preference rights than plaintiff to fill same." *Plaintiffs' Motion for Summary Judgment,* at 7. In support of this assertion, plaintiffs offer a chronology of such promotions to the General Foreman position extending from August 1969 to date. Although plaintiffs nowhere expressly state the legal basis for such assertions, presumably they derive from plaintiffs' belief that the Veterans' Preference Act and applicable CSC regulations somehow grant veterans employed by the Federal Government unconditional preference in promotions. We cannot agree.

When the Veterans' Preference Act was passed, it was explained to Congress that it provided a preference both in *appointment* to and *retention* in Federal positions. *See Hilton v. Sullivan,* 334 U.S. 323, 338 n. 14, 68 S.Ct. 1020, 92 L.Ed. 1416 (1948). With the sole exceptions of additional credits for military service provided examinees by Section 4 of the Act, 5 U.S.C. § 3311, and the waiver under Section 5 of certain physical requirements for promotion, 5 U.S.C. § 3363, neither the Act nor the CSC regulations promulgated thereunder accord veterans preferential treatment in promotions. *See Pulley v. TVA,* 368 F.Supp. 90, 93 (M.D.Tenn.1973).

Nor do the regulations, or the FPM implementing and explaining them, treat temporary promotions as an automatic preamble to permanent promotion with-

out regard to the otherwise applicable requirements of the Federal Merit Promotion program. On the contrary, 5 C.F.R. § 335.103 expressly provides that "an agency may make promotions . . . only to positions for which the agency has adopted and is administering a program designed to insure a systematic means of selection for promotion according to merit." In addition, the FPM, at Ch. 335, Subch. 1–8, states that:

(a) * * *

Temporary promotions are appropriate only for temporary or emergency situations. A temporary promotion may not be used, for example, as a trial period before permanent promotion, as a means of deciding among candidates for permanent promotion, or as a means of training employees in higher grade duties.

* * * * * *

(d) * * * A temporary promotion may not be made permanent without applying the competitive promotion procedures unless the agency made it plain to all interested parties that it might lead to permanent promotion.

As articulated by this court in *Bielec v. United States,* 456 F.2d 690, 696, 197 Ct.Cl. 550, 560 (1972), which rejected plaintiffs' claims to non-competitive promotions to positions upgraded incident to an agency reorganization,

It is well-settled that service by a government employee in an acting capacity does not entitle him to permanently occupy that position nor to receive the salary incident thereto, as his rights and salary are based solely on the position to which he has been officially appointed. *See Ganse v. United States,* 376 F.2d 900, 180 Ct.Cl. 183, 186 (1967); *Price v. United States,* 80 F.Supp. 542, 543, 112 Ct.Cl. 198, 200 (1948); *Coleman v. United States,* 100 Ct.Cl. 41 (1943); *Dvorkin v. United States,* 101 Ct.Cl. 296 (1944), *cert. denied,* 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 586; *Amundson v. United States,* 120 F.Supp. 201, 128 Ct.Cl. 80 (1954); and *United States v. McLean,* 95 U.S. 750, 24 L.Ed. 579 (1877).

Nor is there any question of a constitutional, inherent or vested right to the promotions plaintiffs are claiming. *See, e. g., Testan v. United States,* 499 F.2d 690, 693, 205 Ct.Cl. 330, 335 (1974) (Skelton, J., dissenting), *cert. granted,* 420 U.S. 923, 95 S.Ct. 1116, 43 L.Ed.2d 392 (1975); *Ganse v. United States,* 376 F.2d 900, 902, 180 Ct.Cl. 183, 186 (1967); *Donnelly v. United States,* 134 F.Supp. 635, 636, 133 Ct.Cl. 120, 122 (1955); *Jenson v. Olson,* 353 F.2d 825, 828 (8th Cir. 1965); *Bailey v. Richardson,* 86 U.S.App.D.C. 248, 182 F.2d 46, 57 (1950), *aff'd,* 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951).

■ Finally, there is perhaps no principle more settled in this area of the law than that promotion and non-promotion of employees within a department or agency of Government is a matter of supervisory discretion not ordinarily subject to judicial review. *See, e. g., Testan v. United States, supra; Desmond v. United States,* 201 Ct.Cl. 507, 526 (1973); *Tierney v. United States,* 168 Ct.Cl. 77, 80 (1964); *Pulley v. TVA, supra; Gnotta v. United States,* 415 F.2d 1271, 1276 (8th Cir. 1969), *cert. denied,* 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). This principle was well expressed by Judge Laramore in *Umbeck v. United States,* 149 Ct.Cl. 418, 429 (1960), as follows:

[I]t is the function of the agency rather than the court to make promotions, and to allow plaintiff to recover on this theory would be in effect granting a promotion to plaintiff. It is well settled that this court's jurisdiction extends only to the granting of a monetary judgment. [citations omitted].

*See also Bortin v. United States,* 138 F.Supp. 251, 253, 133 Ct.Cl. 856, 860 (1956).

■ In short, plaintiffs, by their allegations regarding non-promotion, would have the court remove discretion from the Navy Department and substitute the court's judgment as to who should receive permanent promotions. This would

constitute an unwarranted judicial interference with discretionary executive action. Moreover, plaintiffs have not produced the near "irrefragable proof" necessary to overcome the general presumption that the Government has discharged its duties in good faith and in a legal and proper manner. *See Grover v. United States,* 200 Ct.Cl. 337, 344 (1973); *Kozak v. United States,* 458 F.2d 39, 40, 198 Ct.Cl. 31, 35 (1972). Accordingly, we find no merit in this first aspect of plaintiffs' case.

### III

*The Retention Preference Question*

Plaintiffs next contend that defendant acted in contravention of the Veterans' Preference Act and applicable regulations by demoting plaintiffs who were veterans' preference eligibles with the highest retention standings, while retaining at the foreman level competing non-veteran employees possessed of the lowest retention standings. In addition, according to plaintiffs, defendant failed to prepare (and produce) retention registers to support its demotion actions, as purportedly required by 5 C.F.R. §§ 351.404 and 351.501. We do not agree with either of these contentions.

The greater portion of plaintiffs' briefs and arguments in support of the above contentions rely on 5 U.S.C. §§ 3501 *et seq.* and the reduction-in-force regulations promulgated thereunder by the CSC, 5 C.F.R. §§ 351.201 *et seq.* Although plaintiffs have cited various decisions construing the statute and regulations, plaintiffs have not shown how any of these decisions is applicable to the facts of the instant case.

*Hilton v. Sullivan,* 334 U.S. 323, 68 S.Ct. 1020, 92 L.Ed. 1416 (1948), for example, did not involve a temporary promotion. In that case, the Supreme Court rejected the challenge made to Section 12 of the Veterans' Preference Act by a non-veteran permanent employee of the Charleston Navy Shipyard who had been demoted pursuant to a reduction in force while a veteran permanent employee with less seniority had been retained. A similar, albeit constitutional, challenge to Section 12 was rejected in *White v. Gates,* 102 U.S.App.D.C. 346, 253 F.2d 868, *cert. denied,* 356 U.S. 973, 78 S.Ct. 1136, 21 L.Ed.2d 1147 (1958), which was also exclusively concerned with permanent employees affected by a reduction in force. *Reynolds v. Lovett,* 91 U.S.App.D.C. 276, 201 F.2d 181 (1952), *cert. denied, Wilson v. Reynolds,* 345 U.S. 926, 73 S.Ct. 784, 97 L.Ed. 1357 (1953), to like effect, reversed a Section 12 reduction of veteran permanent personnel at the Marle Island Naval Shipyard, notwithstanding the Navy's assessment of individual qualifications, where non-veteran permanent personnel were retained in their same positions and grades.

Plaintiffs also direct attention to *Adler v. United States,* 129 Ct.Cl. 150 (1954); *Parks v. United States,* 147 F.Supp. 261, 137 Ct.Cl. 297 (1957); and *Schweizer v. United States,* 121 F.Supp. 928, 128 Ct.Cl. 456 (1954). Reliance upon these cases, however, is similarly misplaced. In *Adler,* as in *Reynolds v. Lovett, supra,* plaintiffs veteran permanent employees at the New York Naval Shipyard, were demoted pursuant to a reduction in force, while non-veteran permanent employees were retained. In awarding plaintiffs back pay, this court held that the failure to retain plaintiffs at the higher level positions in preference to non-veteran employees violated their rights under Section 12 of the Veterans' Preference Act. Similarly, in *Parks,* this court held Section 12 violated by the reduction in grade of a veteran permanent employee pursuant to a reorganization of the IRS, where other non-veteran employees, who should have been "bumped" or replaced by plaintiff in accordance with plaintiff's veterans' preference retention status, were retained in their positions. Finally, in *Schweizer,* this court held Section 12 a bar to demotion of a non-wartime veteran, employed at the Philadelphia Navy Yard at the time the 1944 Act was passed, where non-veteran employees were simultaneously retained in their positions.

■ None of the foregoing cases deals with the termination of temporary promotions. As defendant correctly asserts, such personnel actions are not within the contemplation of the reduction-in-force statute and regulations. Section 12 of the Veterans' Preference Act, as codified in 5 U.S.C. § 3502(a), prescribes the manner in which employees are to be separated or reduced in position or grade incident to a reduction in force, as follows:

The Civil Service Commission shall prescribe regulations for the release of competing employees in a reduction in force which give due effect to—

(1) tenure of employment;

(2) military preference, subject to section 3501(a)(3) of this title [i. e. concerning retired military members];

(3) length of service; and

(4) efficiency or performance ratings.

The CSC regulations promulgated under the above statute, 5 C.F.R. § 351 *et seq.,* as amplified and explained in the FPM, Ch. 351, provide specific procedures for effecting reductions in force.

■ Apparently, plaintiffs contend that, since in their permanent positions they were classified as I–A veterans' preference eligibles, and since under 5 C.F.R. § 335.101 a position change authorized by § 335.102 does not change the competitive status and tenure of an em-

ployee, they were entitled to the same retention preference rights in the positions to which they were temporarily promoted as they enjoyed in their former permanent positions. There are two fallacies in this position.

■ First, and most obviously, plaintiffs' retention preference standing becomes material only in the event that their release or demotion is occasioned by a reduction in force. In the instant case, only two of the plaintiffs, Mr. Crowley and Mr. Storjohann, were directly affected by such a reduction. As to the remaining three plaintiffs, their basis for appeal must be derived from the statutory and regulatory provisions governing adverse actions in effect at the time plaintiffs initially received their temporary promotions.[8]

■ Second, as to plaintiffs Crowley and Storjohann, the regulations and the applicable decisions indicate beyond doubt that the holders of temporary promotions are not to be accorded the retention preference otherwise available to them in their permanent positions in a reduction-in-force situation. Except for position changes specifically provided for in 5 C.F.R. § 335.101, a position change does not alter the competitive status and tenure of an employee. A temporary promotion is not one of the position changes authorized by that section.[9] Ac-

---

8. *See* Part IV of this opinion. After the change in the regulations, effective Sept. 4, 1968, the termination of a temporary promotion is no longer considered an "adverse action." *See* 5 C.F.R. § 752.103(b)(5). The CSC's BAR, in interpreting the adverse action regulations in these and similar cases, has consistently avoided retroactive application of the amendments thereto, but has held controlling those regulations existing at the time respective employees initially received their temporary promotions. *See In re William Crowley,* BAR Decision, Aug. 21, 1970, at 4. We see no reason for departing from this policy here.

9. As amended, subsection (f)(1) of Section 335.102, effective Sept. 4, 1968, eliminates any uncertainty regarding the status of temporary promotions, as follows:

"[A]n agency may:

\* \* \* \* \* \*

"(f)(1) Except as otherwise specifically authorized by the Commission, temporarily promote an employee to meet a temporary need for a definite period of 1 year or less and extend such a promotion for a definite period not to exceed 1 additional year. At the end of the period for which the agency temporarily promoted the employee, or when the agency determines that it no longer needs the employee in the position, the agency shall return the employee to the position from which it temporarily promoted him, except when it reassigns or demotes him, without time limitation and with his consent, to a different position. *The return of an employee to the position from which the agency temporarily promoted him under this subparagraph or his reassignment or demotion to a different position that is not at a lower grade or level than the position from which he was temporarily promoted is not subject to Parts 351 [reduction in force],*

cordingly, the regulation does not support the argument that retention preference standing attaches to the employee, regardless of the nature of his position (i. e., temporary or permanent), rather than to the job he permanently holds. Were plaintiffs demoted from their *permanent* positions as Pipefitter and Machinist, respectively, pursuant to a Shipyard reduction in force in which non-veterans were retained, there could be no question that such action would violate their entitlement to absolute preference over non-veterans in those same positions. Where their demotions, as here, are from temporary promotions back to their former permanent positions, however, the statute and regulations afford them no such entitlement. Section 351.-601 of the regulations provides that:

> An agency may not release a competing employee from a competitive level while retaining in that level an employee with a specifically limited temporary appointment * * *.[10]

The CSC has consistently interpreted this section to mean that temporary promotees, such as the plaintiffs, must be returned to their former permanent positions before a reduction in force at the higher competitive level can be commenced.[11] It follows that, in so demoting plaintiffs, defendant was merely complying with the applicable regulations.

752 *[adverse action]*, 771 or 772 of this chapter." (emphasis added).

**10.** As amended, effective Sept. 4, 1968, Section 351.601 provides:

"An agency may not release a competing employee from a competitive level while retaining in that level an employee with * * * a specifically limited temporary *promotion*." (emphasis added.)

Subsection (e) of Section 351.201, as amended, effective Sept. 4, 1968, makes even clearer the exclusion of temporary promotees from the retention preference accorded veterans in reductions in force:

"(e) this part [i. e., reduction in force] does not apply to the termination of a temporary promotion or to the return of an employee to the position from which he was temporarily promoted * * *."

This interpretation of the regulations, moreover, is consistent with the Veterans' Preference Act. Such, indeed, was the holding of *Elder v. Brannan*, 341 U.S. 277, 283, 71 S.Ct. 685, 95 L.Ed. 939 (1951), which sustained the retention of non-veteran permanent employees over veteran temporary employees in a reduction-in-force situation on the ground that the regulations group employees *by tenure* and limit the reach of veterans' preference to competing employees of the same group. *See O'Hare v. United States*, 288 F.2d 705, 707, 153 Ct.Cl. 55, 59–60 (1961); *Cohen v. McNamara*, 282 F.Supp. 308, 312 (E.D.Pa.1968). The obvious rationale underlying this initial grouping by tenure instead of by veterans' status was to avoid the result of permitting veteran temporary promotees, during every reduction in force, to automatically displace non-veterans with greater seniority holding the same positions on a permanent basis. Were management required in every instance, as plaintiffs contend, to use reduction-in-force procedures to return temporary promotees to their permanent grades, the result would be to obviate the utility of the temporary promotion as a device for meeting short-term needs. We do not believe this was the intent of the drafters of the Veterans' Preference Act. Nor have plaintiffs produced any evidence of such intent. Accordingly, we can find no merit in this second aspect of plaintiffs' case.

To similar effect are the amendments to Section 351.404(c), effective Sept. 4, 1968, which now directs the agency involved to "enter on a list *apart from the retention register* the name and expiration date of the appointment or *promotion* of each employee serving in a position in the competitive level under specifically limited temporary appointment or *temporary promotion* * * *."

**11.** *See In re Kenneth E. Thompson*, BAR Decision, Feb. 2, 1970, at 5–6 (quoting letter from L. A. Moyer, Executive Director and Chief Examiner, CSC, to Rear Adm. P. B. Nibecker, Chief, Office of Industrial Relations, Navy Department, Feb. 15, 1949), appended to *Defendant's Cross-Motion*, at 103–104.

## IV

### *The Adverse Action Question*

Plaintiffs' final argument is that defendant's terminations of their temporary promotions, treated as adverse actions within the meaning of Section 14 of the Veterans' Preference Act, 5 U.S.C. § 7512, were not effected in accordance with the substantive standard [12] set forth in 5 C.F.R. Pt. 752.

Although the applicable regulations have since been amended,[13] there is no question that under the law in effect prior to September 1968 and, hence, controlling in this case,[14] the termination of temporary promotions and the return of plaintiffs to their former permanent positions is an adverse action [15] and, hence, must be "for such cause as will promote the efficiency of the service."

What constitutes such "cause" as to justify the return of veteran temporary promotees to their former permanent positions is not altogether clear from the regulations and pertinent decisions. Section 752.104(a) of 5 C.F.R. states only that "[a]mong the reasons that constitute 'such cause as will promote the efficiency of the service' for this purpose are the reasons for disqualification of an applicant listed in § 731.201(b)–(g) of this title." Section 731.201 enumerates various types of disqualifying conduct, concluding with the general ground of "any * * * other disqualification which makes an individual unfit for the service." Virtually all of the reported cases in this area similarly concern questions of whether specific kinds of conduct justify discharge or demotion on grounds of

unsuitability or unfitness. *See, e. g., Norton v. Macy*, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969) (homosexual conduct); *Studemeyer v. Macy*, 116 U.S. App.D.C. 120, 321 F.2d 386 (1963), *cert. denied*, 375 U.S. 934, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963) (insubordination); *Taylor v. Macy*, 252 F.Supp. 1021 (S.D. Cal.1966) (criminal convictions that had been expunged). Clearly, the suitability or fitness of the plaintiffs in this case for the higher level positions is not questioned. Accompanying each of the termination notices issued to the plaintiffs was the statement that "[a]lthough this termination is technically classified as an 'adverse action,' it is not in any way a reflection on your performance." *Defendant's Cross-Motion*, at 7.

Indeed, distinguishing this case from prior adverse action cases is the temporary and, hence, conditional nature of the positions which plaintiffs received and from which they were subsequently demoted. *See Powers v. Gold*, 124 F.Supp. 93, 95–96 (D.Mass.1953). Prior to each such temporary promotion, pursuant to FPM, Ch. 335, Subch. 1–8, each of the plaintiffs was issued a standard form memorandum agreement expressly indicating that the promotion being offered was temporary in nature, for a specifically limited duration and for accomplishment of a designated purpose. Among the representations and conditions stated in the agreement were the following:

> b. * * * this temporary promotion is expected to continue for the period shown above. *It may, however, be terminated earlier whenever the*

---

12. There is no dispute regarding defendant's compliance with the procedural requirements of 5 C.F.R. Pt. 752.

13. As amended, subsection (5) of 5 C.F.R. § 752.103(b), effective Sept. 4, 1968, provides that:

"(b) * * * In no case, however, does any of this part apply to:

* * * * * *

"(5) An action terminating a temporary promotion within a maximum period of two years and returning the employee to the position from which he was temporarily promoted or

reassigning or demoting him to a different position that is not at a lower grade or level than the position from which he was temporarily promoted."
See also FPM, Ch. 335, Subch. 1–8(e)(1).

14. *See* note 8 *supra.*

15. *See* FPM, Ch. 335, Subch. 1–8(d): "A change to lower grade after a temporary or limited promotion is subject to the adverse-action procedures of Chapter 752 under any of the following circumstances:—If the period of promotion exceeds 90 days."

*temporary condition for which it was made no longer exists, or whenever, for other reasons, it is determined to be in the best interest of the Shipyard to do so.* (emphasis added.)

\* \* \* \* \* \*

d. \* \* \* You will return to your present position and pay step whenever the basis for your temporary promotion no longer exists, or whenever other reasons occur which warrant terminating your temporary promotion.

Each of the plaintiffs signed this agreement, in advance of his temporary promotion, with the statement that "I understand and agree to the conditions of my proposed temporary promotion as explained above." Each of the plaintiffs, in addition, was issued a 30-day advance notice of proposed termination, setting forth the specific reasons therefor (e. g., decrease in workload). Where plaintiffs were thus appropriately advised of the particular need occasioning their temporary promotions, and that they would be returned to their former positions upon expiration of that need, it would appear to follow that their subsequent reduction *in accordance therewith* would be "for such cause as will promote the efficiency of the service." This, in effect, was the Commission's finding in each of the cases now before us.

■ Plaintiffs contend, however, that their temporary promotions were terminated not in accordance with the terms of their respective agreements, but because the Navy had elected to replace them by retaining in and/or permanently promoting to the higher level positions certain non-veteran employees who had received their temporary promotions subsequent to plaintiffs. In sole support of this purported "rule" that an agency, in a non-reduction-in-force decrease, must first demote those employees most recently temporarily promoted, plaintiffs cite *In re Kenneth E. Thompson*, BAR Decisions, March 18, 1969 and February 2, 1970; *In re James L. Bragdon*, BAR Decision, March 26, 1970; and *In re Chester A. Odiorne*, Appeals Examining

Office (AEO), CSC, Decision, August 7, 1969. These decisions, however, are either clearly distinguishable from the instant case, or are otherwise, in our judgment, unpersuasive on the legal questions here involved.

In *Odiorne*, for example, the AEO reversed the Navy Department's termination of plaintiff's temporary promotion on the ground that the Navy had retroactively applied a new regulation establishing a two-year maximum duration for temporary promotions made on or after September 1, 1968. Since plaintiff had been temporarily promoted prior to that date, the regulation was inapplicable and, hence, plaintiff's return to his former position was determined to be not for such cause as would promote the efficiency of the service.

More closely apposite are the BAR decisions in *Thompson*. Like plaintiffs, Mr. Thompson had been temporarily promoted to the position of Foreman (Leadingman) Pipefitter (in February 1967). The Shipyard's subsequent termination of this promotion (on July 14, 1968) was sustained by the CSC Regional Office, but reversed by the BAR (on March 18, 1969), on the ground that the reason for the termination was to replace plaintiff with other subsequently qualified employees who had received temporary and/or permanent promotions. Thereafter, Mr. Thompson received a second termination notice (May 23, 1969), pursuant to a reduction in force at the Shipyard's Foreman Pipefitter level. On appeal, the Regional Office again sustained the Shipyard's action, but the BAR, on February 2, 1970, again reversed, on the ground that affirmance of the second termination would permit the Navy, in effect, "to accomplish through reduction-in-force application what previously it could not accomplish" in the non-reduction-in-force situation which had occasioned plaintiff's first termination and successful appeal.

Plaintiffs argue that the *Thompson* "rule," i. e., that employees last temporarily promoted must be first demoted when the temporary workload decreases,

is controlling in the instant case. Defendant counters that *Thompson* is factually distinguishable or, in the alternative, that it was wrongly decided. Insofar as *Thompson* purports to carve an exception to 5 C.F.R. § 351.601, which, as earlier discussed, effectively requires the return of all temporary promotees to their lower permanent positions preliminary to any reduction in force at the higher competitive level, we find it unpersuasive. The original purpose in applying Section 14 (adverse action), rather than Section 12 (reduction in force), of the Veterans' Preference Act to the termination of temporary promotions was two-fold: (1) to afford veteran temporary promotees certain procedural safeguards against purely arbitrary agency action, and (2) at the same time, to avoid the result of permitting such veterans (whose status and tenure are not changed after promotion), upon a decrease in workload, to automatically displace all non-veterans who had been occupying the higher grade positions on a permanent basis. In arguing, purportedly on the strength of *Thompson*, that veteran temporary promotees must in every decreased workload situation be retained and/or permanently promoted over non-veterans who received their temporary or permanent promotions subsequent to the veterans, plaintiffs, in effect, urge us to apply the reduction-in-force regulations to non-reduction-in-force situations, thereby ignoring both the governing regulations and the long-established policy of the CSC in the temporary promotion area. We decline to do so.

Nor, in our opinion, does *Thompson* necessarily prescribe so drastic a change in previous law and policy. Limited to its precise facts, the decision deals less with the relative timing of temporary promotions *per se*, than with the particular promotion register from which competing temporary promotees were selected. Thus, as indicated by the BAR, in its decision in the *Crowley* appeal of August 21, 1970, *Defendant's Cross-Motion*, at 48–49, the competing employees in *Thompson* had been temporarily promoted from a competitive promotion register established after the one on which Mr. Thompson had qualified. In contrast, according to defendant's submissions, *no* competing employees retained or permanently promoted over plaintiffs in the instant case had been selected from a register established after the one on which plaintiffs themselves, if at all, had qualified. Plaintiffs, for their part, present little or no evidence to refute this assertion. The "rule", if any enunciated by the BAR in *Thompson*, therefore, is that employees last *qualified* (by inclusion on a competitive promotion register, i. e., not those employees last *temporarily promoted*) must be first demoted when the temporary workload decreases. Thus narrowly viewed, the "rule" comports with the policy and preferences underlying the Federal Merit Promotion program, while preserving that measure of discretion (e. g., as between competing temporary promotees selected from the *same* register) essential to the utility of the temporary promotion device.[16]

■ Finally, it is by now a commonplace principle that where an agency, as here, has complied with the prescribed procedural requirements, this court's review must necessarily be limited to determination of whether that agency's action was arbitrary or capricious, so grossly erroneous as to be in bad faith, unsupported by substantial evidence or in excess of its properly delegated authority. *Morelli v. United States*, 177 Ct.Cl. 845, 858 (1966); *see Boyle v. United States*, 515 F.2d 1397, 1401, 207 Ct.Cl. 27, 34

---

16. *See* Pt. II of this opinion, *supra*. The BAR's decision in *Bragdon*, also cited by plaintiffs, would appear in full accord with our interpretation of *Thompson* here. In *Bragdon*, the BAR reversed the Navy's termination of plaintiff's temporary promotion on the ground that the actual reason for the Navy's action was its selection of another employee for promotion to an additional permanent foreman's billet from a *new* register of qualified eligibles. Since plaintiff had qualified for promotion from a previous register, plaintiff's demotion was determined to be not for such cause as would promote the efficiency of the service.

(1975); *Poschl v. United States,* 206 Ct.Cl. 672, 682 (1975); *Ricci v. United States,* 507 F.2d 1390, 1393, 205 Ct.Cl. 687, 693 (1974); *Grover v. United States,* 200 Ct.Cl. 337, 343 (1973). As stated in *Boyle, supra,* "[i]t is not our function to substitute our judgment for that of the employing agency or the Civil Service Commission; rather we review the case to determine whether their action was reasonable in light of all the evidence." *See Schlegel v. United States,* 416 F.2d 1372, 1375, 189 Ct.Cl. 30, 36 (1969), *cert. denied,* 397 U.S. 1039, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970); *Harrington v. United States,* 174 Ct.Cl. 1110, 1117 (1966); *Guiness v. United States,* 149 Ct.Cl. 1, 6, *cert. denied,* 363 U.S. 819, 80 S.Ct. 1257, 4 L.Ed.2d 1517 (1960). In applying this standard, moreover, the presumption is that the Government officials have acted in good faith in making their decision. *Grover v. United States, supra; Travis v. United States,* 199 Ct.Cl. 67, 70 (1972); *Horne v. United States,* 419 F.2d 416, 419, 190 Ct.Cl. 145, 150 (1969); *Morelli v. United States, supra; Greenway v. United States,* 175 Ct.Cl. 350, 362, *cert. denied,* 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966).

■ In the instant case, each of the plaintiffs was, as previously stated, informed in advance that his promotion was to be temporary in nature, that it was intended solely to meet a special and temporary need, and that it would be terminated and the plaintiff returned to his former permanent position upon expiration of that need, or whenever such termination was otherwise considered to be in the best interest of the Service. During the time plaintiffs served at the higher grade positions, they were compensated at the higher rate commensurate with those positions. When these promotions were subsequently terminated, it was clearly indicated that such termination was not intended as a reflection on plaintiffs' respective capabilities or performance. No taint or stigma resulted. Plaintiffs were not thereafter permanently precluded from actively competing for subsequent permanent promotions. Plaintiffs have failed to discharge their burden of showing that defendant's actions were arbitrary, capricious or contrary to the applicable statutes and regulations. That other competing employees, who had received temporary or permanent promotions subsequent to plaintiffs, were retained at the higher level positions when plaintiffs' temporary promotions were terminated, may well have led plaintiffs to believe they were treated unfairly. However, such a showing, standing alone, does not for the reasons stated above, entitle plaintiffs to recover.

Accordingly, we deny plaintiffs' motion for summary judgment, grant defendant's cross-motion for summary judgment, and dismiss plaintiffs' petition.