Cornelius W. GILES, Jr.

v.

The UNITED STATES.

No. 450–75.

United States Court of Claims.

April 20, 1977.

**648**

Thomas Angelo, Washington, D.C., for plaintiff. Robert M. Tobias, Washington, D.C., attorney of record.

Stephen G. Anderson, Washington, D.C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, New York City, for defendant.

Before NICHOLS, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This case has come before the court on the motions of the parties for summary judgment. It is another in the spate of claims arising from adverse actions by the Internal Revenue Service (IRS) against employees who have violated statutes, regulations, or the IRS rules of conduct which hold employees to exemplary standards in the conduct of the public business and in their personal affairs which reflect on that business.[1]

Plaintiff was formerly a nonprobationary GS–11 revenue officer stationed in Alabama. It was his job to secure payments and filings of returns by delinquent taxpayers. By letter dated May 22, 1973, plaintiff received a notice of a proposed adverse action removing him for his own failure to file or to file timely federal and state income tax returns for the years 1969 (5 months late), 1970 (11 months late), and 1971 (8 months late). No state return was filed for 1971. Plaintiff replied orally to the charges which he admitted, asserting that his conduct was excusable because of personal problems and civic responsibilities, and that, in any event, he was entitled to a refund on each late or omitted return. Plaintiff was removed effective July 13, 1973.

Plaintiff notified his agency that he wanted an arbitration hearing, as provided in the collective bargaining agreement under which he was employed. *Cf. Byrnes v. United States*, Ct.Cl., 553 F.2d 105 (1977). Pursuant thereto, a hearing was held with plaintiff present and represented by counsel. The arbitrator found that plaintiff was

1. *Byrnes v. United States*, Ct.Cl., 553 F.2d 105 (1977); *Boylan v. United States*, 546 F.2d 431, 211 Ct.Cl. —— (1976); *Boyce v. United States*, 543 F.2d 1290, 211 Ct.Cl. —— (1976); *Pascal v. United States*, 543 F.2d 1284, 211 Ct.Cl. —— (1976); *Hoover v. United States*, 513 F.2d 603, 206 Ct.Cl. 640 (1975); *Dargan v. United States*, 208 Ct.Cl. 993 (1975); *Wathen v. United States*, 527 F.2d 1191, 208 Ct.Cl. 342 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *Grover v. United States*, 200 Ct.Cl. 337 (1973); *Birnholz v. United States*, 199 Ct.Cl. 532 (1972); *Ciambelli v. United States*, 198 Ct.Cl. 240 (1972); *Williams v. United States*, 434 F.2d 1346, 193 Ct.Cl. 440 (1970); *Finn v. United States*, 152 Ct.Cl. 1 (1961).

guilty of the charges against him but that the penalty of removal was too harsh, and recommended that it should be set aside and a formal reprimand substituted. The IRS rejected the arbitrator's opinion and affirmed the discharge.

Plaintiff appealed the IRS adverse action to the Civil Service Commission (CSC) and requested a hearing. A hearing was held on July 12, 1974, before the Federal Employee Appeals Authority (FEAA) in Birmingham. The FEAA found that the charges were sustained and unexcused. Plaintiff was so advised by letter dated September 12, 1974.

Plaintiff next appealed to the CSC Appeals Review Board (ARB). In an opinion dated March 31, 1975, the ARB rejected all of plaintiff's contentions and affirmed his removal. On December 24, 1975, plaintiff filed the present suit seeking back pay. His claim is now predicated on three principal allegations: (1) failure to afford him a pretermination hearing; (2) failure of IRS to show that his discharge was for such cause as would promote the efficiency of the service; (3) plaintiff was treated more harshly than other IRS personnel similarly situated. We will discuss these contentions in the order stated, although we find merit in none of them.

 In the beginning, it must be noted that in considering these adverse personnel actions our review is limited to ascertaining that the final administrative appellate decision was in conformance with the Constitution, statutes, and regulations, was not arbitrary or capricious or taken in bad faith, and was supported by substantial evidence. *Urbina v. United States*, 530 F.2d 1387, 209 Ct.Cl. 192 (1976); *Crowley v. United States*, 527 F.2d 1176, 1190, 208 Ct.Cl. 415, 441 (1975); *Charley v. United States*, 208 Ct.Cl. 457, 464–65 (1975); *Boyle v. United States*, 515 F.2d 1397, 1401, 207 Ct.Cl. 27, 34 (1975). Further, the Government enjoys the presumption that its officials make their decisions in good faith. *Crowley v. United States, supra*, 527 F.2d at 1191, 208 Ct.Cl. at 442; *Charley v. United States, supra; Boyle v. United States, supra.*

 Plaintiff's contention about defendant's failure to accord him a pretermination hearing raises the constitutional issue of due process in his removal procedures. The Lloyd-LaFollette Act, 5 U.S.C. § 7501(a) (1970), specifically makes a pretermination hearing only discretionary with the removing authority. The Supreme Court considered a similar issue in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The decision there was a plurality one, but it makes clear that a pretermination hearing was not necessary for agency action against a nonprobationary employee to pass muster under the due process clause of the fifth amendment. The justices gave different reasons for reaching the same conclusion squarely applicable to the facts of the instant case. In short, in administrative review of his removal, plaintiff was accorded hearings, and they suffice for due process. The cause for his removal was ascertained under applicable procedures of the statute and avoided any "stigma" which would otherwise result from an arbitrary, improper discharge. Plaintiff argues that his "liberty" interest is infringed because he is entitled to be free from the stigma of the dismissal itself, but *Arnett* disposes of this by showing that the post termination appeal procedures have vindicated plaintiff's right to protect whatever liberty or property interests he has in this situation. Cases relied upon by plaintiff, none of which involve federal employees like plaintiff whose rights relate to the Lloyd-LaFollette Act, are deemed not to be in point.

 Plaintiff next attacks the ARB decision as lacking in supporting evidence. He says defendant has failed to prove that his removal, for admitted failure to file tax returns, would "promote the efficiency of the service." 5 U.S.C. § 7501(a) (1970). Further, plaintiff says that, while in other cases the premise that willful, flagrant violation of tax laws by IRS officers charged with enforcing those laws may have a rational connection to their continued employment and to the effectiveness of a voluntary compliance system, it is not true here. Plaintiff's argument is that IRS permits

other taxpayers to do without penalty what plaintiff did, to wit: fail to file timely where no tax is due or a refund is due. It is true that section 5(11)31.2(6) of the IRS manual allows a revenue officer to close a delinquent taxpayer's case in such circumstances. However, the revenue code makes it plain that citizens "shall" file their returns. 26 U.S.C. § 6012(a) (1970). This is elementary under a voluntary reporting system. The accounting and auditing procedures under the system flow from it. Where plaintiff's argument breaks down is in assuming that he is above participating in this system. Yet, how must it appear to plaintiff's fellow workers, to revenue officials of his state, and to other members of the taxpaying public who know of it, that an agent of IRS evaded compliance with so elementary, but fundamental, a requirement of the income tax system? The IRS collection division chief testified that conduct such as plaintiff's would have a deleterious effect upon the morale of other IRS personnel and upon the respect which other Government agencies and the public had for IRS. We conclude that this is substantial evidence upon which the ARB could reasonably conclude that considerations of the efficiency of the service justified, if not mandated, plaintiff's discharge. As we said in *Birnholz v. United States,* 199 Ct.Cl. 532, 537 (1972):

> The IRS is rightly concerned with its image of honesty and integrity. Members of the public, who must turn square corners in tax matters, demand no less of revenue officials. * * *.

■ Nor is plaintiff excused by the procedure contained in the IRS manual, for that simply permits a revenue officer reviewing a taxpayer's account to dispense, in his discretion, with the formal disclosure once he is satisfied that he knows the taxpayer's financial picture and that no tax is owed beyond any already paid or withheld. Plaintiff cannot be considered an auditor of his own account, possessed with a dispensing power, but rather must hold himself open to audit like all other taxpayers by timely filing his returns, as the law requires. The thinking of plaintiff in this

matter, carried to its logical extreme, would be for IRS to assume that the only people who fail to file returns are those who owe no tax. This, of course, is wishful thinking. It is no small burden for IRS to have to make investigations to ferret out the nonpayers. To the extent that taxpayers honestly file, and most do, the need for investigations is minimized and the efficiency of the Service is promoted. If, on the other hand, taxpayers are encouraged to believe they can unilaterally determine whether or not to file when their incomes are within the range which requires filing, the need for investigations increases and the efficiency of the Service is impaired. Plaintiff's example undercuts the Service's efforts to encourage voluntary compliance and, if condoned, could impair the credibility of IRS with tax officers and the public generally.

We conclude, therefore that the action taken against plaintiff is sustainable as a matter within the discretion of IRS, that there was substantial evidence for the action it took, and that the action was taken in good faith and with careful adherence to applicable statutes and regulations. *Wathen v. United States,* 527 F.2d 1191, 208 Ct.Cl. 342 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 66, 50 L.Ed.2d 82 (1976); *Schlegel v. United States,* 416 F.2d 1372, 1377–378, 189 Ct.Cl. 30, 40 (1969), *cert. denied,* 397 U.S. 1089, 90 S.Ct. 1359, 25 L.Ed.2d 650 (1970). The present case is very similar to *Dargan v. United States,* 208 Ct.Cl. 993 (1975), which also involved the failure of an IRS employee to file his returns timely, among other offenses, and where removal was upheld.

■ Finally, plaintiff complains that the ARB ruling sanctioned a penalty too harsh in relation to the misconduct involved. The court will normally defer to the administrative judgment on appropriate corrective action unless its severity appears totally unwarranted in light of such factors as the range of permissible punishment specified by statute or regulation, the disciplined party's job level and nature, his record of past

performance, the connection between his job and the improper conduct charged, and the strength of the proof that the conduct occurred. *Boyce v. United States,* 543 F.2d 1290, 211 Ct.Cl. —— (1976); *Rifkin v. United States,* 209 Ct.Cl. 566 (1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 545 (1977); *Power v. United States,* 531 F.2d 505, 209 Ct.Cl. 126 (1976).

▮ It is true that plaintiff served IRS for over 20 years, that he did not owe a tax, and that he had serious personal problems and responsibilities. However, plaintiff did not bother to request an extension of time for filing his returns, even though such extensions may be readily obtained for good cause. Further, his job as a GS–11, step 6, revenue officer was fairly high placed, required him to deal directly with the taxpaying public as an IRS representative, and engaged him in the task of extracting from delinquent taxpayers not only monies due but their returns as well. There was no abuse of discretion or bad faith in defendant's concluding, under all the circumstances, that the offense bore a reasonable relationship to the efficiency of the Service. The case is more like *Byrnes v. United States, supra,* where dismissal was upheld, than like *Boyce v. United States, supra,* where it was overturned. *Cf. Rifkin v. United States, supra.* Further, plaintiff has not contested that the alleged conduct occurred, the egregious nature of which plainly sets the case apart from *Power v. United States, supra.* Finally, plaintiff has failed to establish that the ARB erred in discounting his assertion that he was accorded disparate treatment, being given a harsher penalty than others in similar circumstances. Accordingly, we cannot say that plaintiff's penalty was "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Power v. United States, supra,* 531 F.2d at 507, 209 Ct.Cl. at 130. There is no call for us to upset the ARB-approved penalty determination on such a record as this one.

Defendant's motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment is denied. The petition is dismissed.