This personnel case comes to the court on cross-motions for summary judgment involving the challenge of Herbert H. Harris to an adverse ruling by the Federal Employee Appeals Authority (FEAA). The issues have been fully briefed and oral argument has been had.
Mr. Harris, a preference eligible veteran, was employed by the Postal Service from 1962 to 1977, when he was removed from the service. He was initially hired as a writer, and he last served as a Philatelic Editor. By 1977 his primary responsibilities included drafting speeches and correspondence. By letter dated March 7, 1977, and signed by his immediate supervisor, Donald M. McDowell, Mr. Harris was given advance notice of a proposal to remove him from the Postal Service. He replied in writing and was removed April 7, 1977. The FEAA heard his appeal, and after a hearing issued its opinion on June 15, 1978, sustaining three of the four specifications in the Postal Service’s charges. The Office of Appeals, Merit Systems Protection Board (formerly the Appeals Review Board) denied Harris’s request to reopen the decision. He now *698 seeks review by this court, challenging the conclusions of the FEAA as to each of the three specifications it sustained, and as to the severity of the penalty. We uphold the administrative decision.
We follow, of course, the standard of review that this court has long applied in reviewing Civil Service Commission decisions in adverse action personnel cases. We are limited to determining whether the "final administrative appellate decision was in conformance with the Constitution, statutes, and regulations, was not arbitrary or capricious or taken in bad faith, and was supported by substantial evidence.” Giles v. United States, 213 Ct. Cl. 602, 605, 553 F.2d 647, 649 (1977). For findings of fact, this standard is the means for judicially determining whether FEAA properly based its findings on the preponderance of the evidence.[1]
The three charges FEAA upheld all concerned plaintiffs failure to follow directions and to perform adequately under the demands made on him by his supervisors. Specification A was that he failed to follow explicit instructions in preparing certain speeches. Specification B was that he failed to draft minimally acceptable speeches. Specification C asserted his failure to prepare adequate responses (to be signed by his supervisor) to correspondence received by the supervisor’s branch of the Postal Service. We are satisfied, on the whole record, that FEAA properly held that Mr. Harris, for whatever reason, too often failed, refused, or was unable to adhere to his supervisor’s standards, in the specified matters and in parallel instances, so that he was not properly fulfilling the requirements of this position as the officials in charge felt that they should be fulfilled. This is a sufficient reason for disciplining an employee for the good of the service. Employees have to adapt, and be able to adapt, to the proper demands of their supervisors. An otherwise competent employee who regularly refuses or fails to follow his supervisor’s proper directives has no right to be retained in his position. It is not a justification that the employee thinks his own way is better or equally good.
*699 Plaintiff makes particular objections to the FEAA’s decision which we must also reject. One is that that agency relied too heavily on the testimony of Mr. McDowell, plaintiffs supervisor. Mr. McDowell testified that he told Mr. Harris what he wanted done in the speeches assigned to him, and that Mr. Harris failed to do what he was told. The latter denied receiving those instructions and contends that they should have been given in writing. The FEAA, however, found no reason undermining Mr. McDowell’s credibility and relied on his testimony. This court has held that we must defer to the administrative factfinder on issues of credibility, unless the testimony is "inherently improbable or discredited by undisputed evidence or physical fact,” Koppers, Inc. v. United States, 186 Ct. Cl. 142, 149 n.7, 405 F.2d 554, 558 n.7 (1968). These factors have not been shown to exist here. Nor has the plaintiff shown that McDowell acted in bad faith; indeed, the plaintiff himself said at the hearing that McDowell was not motivated by personal animosity. Record vol. Ill, Tr. vol. II, at 101. See Giles v. United States, supra, 213 Ct. Cl. at 605, 553 F.2d at 649. Accordingly, McDowell’s testimony constitutes substantial evidence supporting the FEAA’s decision. E.g. Koppers Co., supra, 186 Ct. Cl. at 149, 405 F.2d at 558; Schnakenberg v. United States, 219 Ct. Cl. 697 (1979); Morris v. United States, 224 Ct. Cl. 648 (1980).[2]
We do not consider it fatal that the instructions were not in writing, and agree with the FEAA that "[i]t is not reasonable or feasible to require a supervisor to issue all of his instructions relating to daily assignments in writing.” Appeal of Herbert H. Harris, United States Civil Service Commission, FEAA, Dec. No. DC752B80247, at 7 (June 15, 1978). Mr Harris admits that he knew as general precepts the instructions he was charged with failing to follow. Given this, plaintiffs failure to do what he knew was expected of him amounts to a failure to follow explicit instructions even if those instructions were not specifically reiterated with the assignment of any given speech.
*700 The plaintiff also argues, in the context of all three specifications, that the decision to remove him was based on failings with which he was not charged. We do not think this was so. Under Specification A there was apparently uncontradicted testimony that the plaintiff refused to rewrite two speeches when asked to do so by his supervisor. Record vol. II, Tr. vol. I, at 34, 37. These two incidents had to do with two speeches expressly referred to in that specification. Moreover, the various matters to which plaintiff refers all added to the credibility and weight of Mr. McDowell’s testimony that the plaintiff failed to do what he was told.[3]
Specifications B and C charge that a substantial number of the plaintiffs speeches were not "minimally acceptable” and a substantial amount of his draft correspondence was not "adequate.” The plaintiff seems to think that the words "acceptable” and "adequate” limit these charges to adequacy of content, or intrinsic worth. We agree that quality of content is an element of acceptability, but this proposed definition limits these terms too severely. A speech completed two weeks after the ceremony at which it was to have been delivered would be unacceptable and inadequate — however brilliant it may have been. In the case of the thirteen speeches before us in Specification B, the amount of excised and rewritten material supports a conclusion that Mr. McDowell considered much of these speeches to be largely inadequate for the needs he wanted met — and his good faith must be presumed (in the absence of contrary proof). E.g. Giles, supra, 213 Ct. Cl. at 605, 553 F.2d at 649. Apart from the subjective issues of content and style, it is clear from the record (both testimonial and documentary) that the plaintiff did not submit letters or speeches to Mr. McDowell that met his requirement that he receive timely, clean,[4] final drafts reasonably free of errors in details, and that would require little or no substantial *701 editing, rewriting or research by other employees. On the basis of the testimony and a review of the documents, there is ample evidence to support the FEAA’s finding that the thirteen speeches listed in Specification B repeatedly failed to meet these criteria. And although the flaws in the correspondence cited in Specification C may be slight, taken one by one, their cumulative impact, as shown in a memorandum McDowell gave the plaintiff dated November 26,1976, Record vol. I, 244-45, suggests a failure to perform in a manner that adequately met the not unreasonable standards of the supervisor for whose signature they were written.
Finally, plaintiff claims that his removal was grossly disproportionate and an unwarranted penalty. This court has often said that "the measure of the penalty is within the discretion of the agency” unless there has been an abuse of discretion in that the penalty is disproportionately harsh. Grover v. United States, 200 Ct. Cl. 337, 353 (1973); Accord, e.g. Heffron v. United States, 186 Ct. Cl. 474, 484, 405 F.2d 1307, 1312 (1969); Giles, supra, 213 Ct. Cl. at 608, 553 F.2d at 650-51; Brewer v. United States, 227 Ct. Cl. 276, 282, 647 F.2d 1093, 1098 (1981), cert. denied, 454 U.S. 1144 (1982).
We do not find such disproportion in this case. Mr. Harris has not argued that there are any regulations requiring the agency to locate or seek alternative placement. Plaintiffs work had previously been curtailed on grounds comparable to those for which he was removed, and there is not great reason to think that he would perform better in a different slot (unless his new supervisor’s demands happened to coincide with plaintiffs own views). The reasons given by the FEAA to support its decision — the supervisor’s expectations were reasonable, a high percentage of plaintiffs work was unacceptable to the supervisor, there was little improvement over time, and other employees had to perform unnecessary work as a result of the unacceptable quality of plaintiffs drafts — are supported by substantial evidence and do not indicate that removal in the circumstances of this case was an abuse of discretion.
*702 For these reasons, plaintiffs motion for summary judgment is denied, defendant’s motion is granted, and the petition is dismissed.

 This case is not governed by the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111, see 5 U.S.C. §§ 7701, 7703.

 The plaintiffs reliance on Torrington Co. v. N.L.R.B., 506 F.2d 1042, 1048 (4th Cir. 1974) is misplaced. That case rejects an agency’s refusal to rely on uncontradicted testimony for which there was other support in the record.

 In this connection, the appeals officer quite properly reviewed the documentary evidence — the speeches themselves and related material, before and after editing— and relied on it, as well as on McDowell’s testimony, in concluding that the drafts plaintiff submitted were not written as McDowell had wanted them to be.

 Plaintiff says that the Government’s attorney admitted that clean copy had nothing to do with the charges. In fact, she said it had nothing to do with Specification A. She did not rule it out as part of Specification B (or C). Record vol. II, Tr. vol. I, at 135.