Timothy E. **ROBINSON**

v.

The **UNITED STATES.**

No. 492–81C.

United States Claims Court.

April 17, 1984.

Steven M. Angel, Oklahoma City, Okl., for plaintiff.

Mark D. Friedman, Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard K. Willard, David M. Cohen, and Sandra P. Spooner, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

WHITE, Senior Judge.

The plaintiff, Timothy E. Robinson, sues in this case because of his allegedly wrongful removal from his position as a journeyman welder at Tinker Air Force Base (Tinker AFB), Oklahoma, on November 24, 1978. He seeks back pay and restoration to his former position.

The complaint (then called a petition) was filed in this court's predecessor, the United States Court of Claims, on August 12, 1981. It was transferred to this court on October 1, 1982, pursuant to section 403(d) of Public Law 97–164 (96 Stat. 25, 58).

On September 14, 1982, shortly before the case was transferred to this court, the defendant filed a motion for summary judgment. Subsequently, after briefs were filed by the parties, the motion was denied by this court (1 Cl.Ct. 440 (1983)).

Thereafter, a trial on the merits was held in Oklahoma City, Oklahoma, and the parties then filed briefs and proposed findings of fact.

The plaintiff was removed from his position by the Air Force because of his alleged "falsification of an official document." The official document which the plaintiff allegedly falsified was his time card for the pay period beginning May 28, 1978, and ending June 10, 1978, and particularly the entries in the space for June 8, 1978, indicating that the plaintiff was on fulltime jury duty that day and was entitled to credit on the payroll at Tinker AFB for 8 hours of duty.

The plaintiff contends before the court, first, that "there is not any evidence to show an intentional falsification"; and, second, that the plaintiff's discharge "was unduly harsh." The proper consideration of these contentions requires a rather full summary of the facts.

### Summary of the Facts

Before his removal, the plaintiff was employed as a journeyman welder at Tinker AFB. His hours of work were from 6:45 a.m. to 3:30 p.m., 5 days per week, Monday through Friday, with 45 minutes off for lunch at midday.

In the latter part of May or the early part of June 1978, the plaintiff received a subpoena directing him to report for jury duty to the Oklahoma County Courthouse in Oklahoma City at 8:00 a.m. each day during the week of June 5–9, 1978. The plaintiff showed the subpoena to his immediate supervisor at Tinker AFB; and the plaintiff requested leave for the week of June 5–9 so that he might perform the required jury service. The supervisor gave his consent; and he told the plaintiff that, when he returned to Tinker AFB, he should bring with him a certificate from the county showing the days on which the plaintiff performed jury duty. Oklahoma County customarily issued such certificates to jurors.

At the time involved here, it was customary, when an employee at Tinker AFB was subject to jury duty on a particular day, for the employee not to report for work at Tinker AFB in the morning, but to go directly from his or her home to the courthouse, arriving there before 8:00 a.m. If the employee was required to remain on call at the courthouse throughout the remainder of the normal working day at Tinker AFB, the employee was given credit for 8 hours of work at Tinker AFB and was paid by the Air Force for 8 hours of work (less any juror fee that the employee might receive for jury service).

If an employee who had been called for jury duty on a particular day was excused by the court before the end of the normal working day at Tinker AFB, the employee was expected to proceed to Tinker AFB and to work there for the remainder of the normal workday, if it was practicable to do so in view of the amount of time remaining in the workday, the distance involved in travelling from the courthouse to Tinker AFB, the type of transportation available to the employee, etc. If an employee failed to report to Tinker AFB for work in a situation where it was practicable to do so, the employee was charged with annual leave for the time he or she could have worked after being released from jury duty.

Each day on June 5, 6, and 7, 1978, the plaintiff reported to the Oklahoma County Courthouse before 8:00 a.m., and later served on a jury. He did not finish his work as a juror any day before 5:00 p.m.; and on June 7 he served on a jury until sometime between 6:00 and 6:15 p.m. As his normal workday at Tinker AFB ended at 3:30 p.m., the plaintiff was not subject to any requirement that he report to Tinker AFB for work on any of the 3 days.

On the morning of June 8, 1978, the plaintiff went from his home to the Oklahoma County Courthouse as usual; and, by 8:00 a.m., he was in the jury room where jurors customarily assembled at the beginning of the day. On each of the previous mornings, a judge had appeared in the assembly room at about 8:00 a.m., had taken the roll of the jurors, and had then assigned the jurors to different jury panels for the day. Approximately 25 other persons were in the assembly room with the plaintiff at 8:00 a.m. on June 8, waiting for a judge to appear. However, no judge appeared on the morning of June 8. At about 10:00 a.m. that morning, the plaintiff left the assembly room, went to the office of the clerk of the court, and reported that no judge had appeared in the assembly room. The plaintiff was then informed that all jurors had been excused from further jury duty that week at about 4:00 p.m. on June 7. Upon receiving this information, the plaintiff returned to the assembly room and informed the other occupants

that there would be no further jury duty during the remainder of the week. The plaintiff then left the county courthouse sometime between 10:15 and 10:30 a.m., went to the place where his automobile was parked, and returned to his home. He did not report to Tinker AFB for work at any time during June 8.

If, upon leaving the courthouse on June 8, the plaintiff had gone directly to Tinker AFB, his traveling time would have been approximately 30 minutes. Then, at mid-day, he would have been entitled to take 45 minutes off for lunch, but he could have worked for approximately 3 hours and 45 minutes.

It is the practice at Tinker AFB for the immediate supervisor in each unit to mark the time cards of the employees assigned to the unit. This is customarily done some-time between 8:00 a.m. and 10:00 a.m. each day, as the supervisor takes the roll of the employees assigned to the unit. The space for the particular day on the time card of each employee is marked to show whether the employee is present for duty or absent; and, if an employee is absent, his or her time card is marked to show the reason for the absence (*e.g.*, whether the employee is on annual leave, or is absent without leave, or is absent to perform jury duty, etc.). If an employee is absent to perform jury duty, the space on the employee's time card for that date is marked "JD" and a nota-tion is also made to show that the employee is entitled to credit for 8 hours of work on that date.

For each of the 4 days, June 5, 6, 7, and 8, 1978, the plaintiff's immediate supervi-sor, assuming that the plaintiff was per-forming fulltime jury duty, marked the plaintiff's time card, in the space for the particular date, with the notation "JD" and an indication that the plaintiff was entitled to credit for 8 hours of work.

At 6:45 a.m. on June 9, 1978, the plaintiff reported to Tinker AFB for work as usual. The plaintiff's immediate supervisor, dur-ing the course of his rounds on the morn-ing of June 9 for the purpose of taking the roll of employees in the unit, asked the plaintiff to initial the latter's time card near the "JD" entries in the spaces for June 5, 6, 7, and 8. The plaintiff initialed the time card for each of the 4 days, thus verifying that he had served on jury duty fulltime each day and was entitled to credit for 8 hours of work.

During the initialing transaction, the plaintiff's immediate supervisor asked him for the usual certificate from the county showing that the plaintiff had served on jury duty during the 4-day period, June 5-8, 1978. The plaintiff replied that he had forgotten to bring the certificate with him.

The plaintiff did not say anything to his immediate supervisor or to any other supe-rior on June 9, 1978, or at any other time during the next few months, about what had happened on June 8.

On several occasions after June 9, 1978, over a period of approximately 3 months, the plaintiff's immediate supervisor re-quested that the plaintiff supply him with a certificate from the county showing that the plaintiff had served on jury duty during the June 5-8, 1978, period, but the plaintiff never did so.

Tinker AFB paid the plaintiff his base pay (less any juror fee received by the plaintiff) for 32 hours of work during the 4-day period, June 5-8, 1978, on the as-sumption that the plaintiff had served full-time on jury duty during each of those days.

On September 12, 1978, as the plaintiff had never furnished to his immediate su-pervisor a certificate from the county rela-tive to the plaintiff's jury service in June 1978, the supervisor requested security personnel at Tinker AFB to conduct an investigation into the matter. As a result of the investigation, it was learned that the plaintiff had served on jury duty during the 3-day period, June 5, 6, and 7, 1978, but that he had not performed any jury duty on June 8, 1978.

Following formal administrative proceed-ings, the plaintiff was removed from his position at Tinker AFB on November 24, 1978, for falsifying an official document.

This action was upheld by the Dallas Field Office of the Merit Systems Protection Board on March 29, 1979, after a hearing. The plaintiff later requested the Merit Systems Protection Board to review the decision of the Dallas Field Office, but on July 9, 1980, the Board declined to accept the plaintiff's request for review, stating that such request "was not timely filed."

The present action followed.

## Substantial Evidence

■■■ As previously stated, the plaintiff's first contention is that the decision by the Air Force to remove him from his position is not supported by evidence sufficient to show an intentional falsification of the time card entry for June 8, 1978. This contention is doubtless grounded upon the well known rule of law that disciplinary action against a government employee cannot successfully withstand judicial scrutiny unless it is (among other things) supported by substantial evidence. *Fucik v. United States*, 228 Ct.Cl. 379, 382, 655 F.2d 1089, 1093 (1981); *Brewer v. United States Postal Service*, 227 Ct.Cl. 276, 279, 647 F.2d 1093, 1096 (1981), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982), 655 F.2d 1089, 1093 (1981). In this connection, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

The factual summary previously set out demonstrates that the administrative determination regarding the plaintiff having deliberately falsified an official document is supported by substantial evidence.

That the plaintiff was aware that he was falsely claiming credit for fulltime jury duty on June 8 is indicated by the surrounding circumstances. For example, at the time of the initialing of the time card entry for June 8, the plaintiff's immediate supervisor asked him for the usual certificate from the county indicating the performance of jury duty on June 8 (as well as on June 5, 6, and 7), and the plaintiff replied that he had forgotten to bring the certificate with him to Tinker AFB. Also significant is the circumstance that, when the conversation between the plaintiff and his immediate supervisor concerning the plaintiff's jury duty occurred on June 9, the plaintiff did not say anything to his immediate supervisor about what had happened on June 8; and, indeed, during the ensuing period of several months, the plaintiff never said anything to any superior at Tinker AFB about the happenings on June 8. In addition, the plaintiff's failure to produce a certificate of jury service from the county during the ensuing period of approximately 3 months, although requested to do so on several occasions, also justifies the conclusion that the plaintiff was aware that he had falsely claimed credit for fulltime jury duty on June 8, 1978, although he was not entitled to do so.

■■■ It is concluded, therefore, that the record as a whole contains substantial evidence supporting the administrative determination that the plaintiff deliberately falsified an official document with respect to a material fact.

## The Penalty

The plaintiff's second contention before the court is that the penalty of removal was unduly harsh in the present case.

Under the pertinent Air Force Regulation, the penalty of removal was an authorized penalty for the deliberate falsification by a civilian employee of a material fact in connection with an official document. However, the penalty for a first offense— and, so far as the record shows, the plaintiff had never previously falsified an official document—ranged between a reprimand and removal, so the plaintiff was assessed the most severe of the possible penalties.

■■■ Deciding on the severity of the punishment to be assessed when a civilian employee of the Government is found to have engaged in improper conduct is left largely to the discretion of the particular agency; and the courts will not interfere unless the

penalty is so disproportionate to the offense as to constitute a manifest abuse of discretion. *Alers v. United States*, 224 Ct.Cl. 560, 570, 633 F.2d 559, 564 (1980); *Giles v. United States*, 213 Ct.Cl. 602, 609, 553 F.2d 647, 650–51 (1977); *Power v. United States*, 209 Ct.Cl. 126, 130, 531 F.2d 505, 507 (1976).

In the present case, the Air Force official who made the final decision on the penalty of removal in the plaintiff's case did so on the basis of the following factors: (1) the plaintiff had falsified a document for personal gain; (2) the plaintiff had previously been disciplined on three separate occasions for leaving his work area without permission, on one occasion for boisterous play at the work place, and on one occasion for using the terms "liar" and "dumb ass" to an immediate supervisor; (3) it was well known by personnel at Tinker AFB, including the plaintiff, that the management regarded the falsification of official documents as a serious offense; and (4) the deciding official believed that if he imposed a lesser penalty than removal in the plaintiff's case, his own head would probably roll.

█ It is the last factor mentioned in the preceding paragraph that is really troublesome in the present case. It surely must be a minimum requirement in the government service that the official who exercises the power of determining the penalty to be assessed in a disciplinary case should do so on the basis of a fair and objective evaluation of all the pertinent factors, and without being influenced by "fear or favor" based on the supposed attitude of his superiors. It is concluded that when the deciding administrative official in this case was influenced, at least in part, to assess the harshest possible penalty against the plaintiff because he believed a lesser penalty would displease his superiors and probably result in dire consequences to his own career in the government service, the decision to discharge the plaintiff was thereby flawed, and the administrative action in removing the plaintiff must be regarded as having been a serious abuse of discretion.

Consequently, the penalty of removal in the present case cannot stand.

It necessarily follows that the plaintiff is entitled to recover.

## CONCLUSION OF LAW

On the basis of the foregoing memorandum of decision and the facts as found by the court, including the conclusional findings stated in the memorandum of decision, the court concludes as a matter of law that the plaintiff is entitled to recover.

IT IS THEREFORE ORDERED as follows:

1. The Air Force shall promptly reinstate the plaintiff in his position as a journeyman welder at Tinker AFB.

2. The Air Force is not precluded from assessing against the plaintiff a penalty, other than removal, permitted by the pertinent regulation for his falsification of an official document with respect to a material fact on June 9, 1978, the determination of the proper penalty to be made by an official other than the one who previously assessed the penalty of removal.

3. Within 60 days from the date of this decision, the parties shall file a joint stipulation setting out the amount of the monetary judgment to be entered for the plaintiff in this case, or, in the alternative, each party shall file a statement listing the documentary exhibits that are to be offered in evidence, and listing the witnesses who are to be presented, in further proceedings under Rule 42(c) to determine the amount of the plaintiff's monetary recovery.

## FINDINGS OF FACT

1. As of June 1978:

(a) The plaintiff, Timothy E. Robinson, was employed by the Department of the Air Force as a civilian journeyman welder at Tinker Air Force Base (Tinker AFB), Oklahoma. His employment at Tinker AFB had continued over a period of approximately 14 years, with a 3-year break while he was in the military service.

(b) The plaintiff's hours of work at Tinker AFB were from 6:45 a.m. to 3:30 p.m., 5 days per week, Monday through Friday, with 45 minutes off for lunch at midday.

(c) The plaintiff's immediate, or first-level, supervisor was Billy R. Perry (Mr. Perry). Sometimes, when Mr. Perry was not present, his supervisory duties were temporarily assumed by Aubrey S. Bryce.

(d) The plaintiff's second-level supervisor was Eugene D. Lindsey, a general foreman at Tinker AFB.

(e) The plaintiff was a member of the American Federation of Government Employees; and, since 1967, he had been a Union Steward at Tinker AFB.

(f) During his period of service at Tinker AFB, the plaintiff had been the subject of the following disciplinary actions:

(1) He was orally admonished for leaving the shop on December 14, 1977, after his request for permission to leave had been denied by his immediate supervisor.

(2) On March 27, 1978, he was again orally admonished for leaving the shop without permission.

(g) The plaintiff was aware that the management at Tinker AFB considered the falsification of government records, including time cards, to be a very serious offense, which could result in an employee's removal.

2. (a) Sometime before June 5, 1978, the plaintiff was served with a subpoena ordering him to report for jury duty at the Oklahoma County Courthouse in Oklahoma City, Oklahoma, at 8:00 a.m. each day during the 5-day period, June 5–9, 1978. The evidence in the record indicates that the plaintiff received the subpoena near the end of May or the beginning of June 1978, but the exact date is not established.

(b) After receiving the subpoena, the plaintiff showed it to Mr. Perry, his immediate supervisor, and requested leave for the week of June 5–9, 1978, so that he might perform the required jury service. Mr. Perry gave his consent, and told the plaintiff that when he returned to Tinker AFB, he should bring with him a certificate of service from the county, verifying the performance of jury duty by the plaintiff. Oklahoma County customarily issues such certificates to jurors.

3. (a) At the time involved here, it was customary, when an employee at Tinker AFB was called for jury duty on a particular day, for the employee not to report for work at Tinker AFB in the morning, but to go directly from his or her home to the courthouse, arriving there before 8:00 a.m. If the employee was subject to call for jury duty throughout the remainder of the normal working day at Tinker AFB, the employee was given credit for 8 hours of work at Tinker AFB and was paid by the Air Force for 8 hours of work (less any juror fee that the employee might receive for jury service).

(b) If an employee who had been called for jury duty on a particular day was excused by the court before the end of the normal working day at Tinker AFB, the employee was expected to proceed to Tinker AFB and to work there for the remainder of the normal workday, if it was practicable to do so in view of the amount of time remaining in the workday, the distance involved in traveling from the courthouse to Tinker AFB, the type of transportation available to the employee, etc. If an employee failed to report to Tinker AFB for work in a situation where it was practicable to do so, the employee was charged with annual leave for the time he or she could have worked after being released from jury duty.

4. (a) On each of the 3 days, June 5, 6, and 7, 1978, the plaintiff did not report to Tinker AFB, but, instead, went directly to the Oklahoma County Courthouse. He arrived there sometime before 8:00 a.m. and went to the jury room where jurors customarily assembled. At about 8:00 a.m. each morning, a judge appeared in the jury room, took a roll call of jurors, and assigned the jurors to different jury panels.

(b) On each of the 3 days, the plaintiff served on a jury; and he finished his work as a juror sometime between 5:00 p.m. and

6:15 p.m. each day. Upon completing his jury duty at the end of the day, he left the courthouse and went to his home.

(c) The plaintiff's work as a juror on June 7, 1978, was completed sometime between 6:00 and 6:15 p.m.

5. On the morning of June 8, 1978, the plaintiff went from his home to the Oklahoma County Courthouse as usual, and was in the assembly room for jurors by 8:00 a.m. Approximately 25 other persons were assembled in the room. However, no judge appeared in the assembly room at about 8:00 a.m., and the plaintiff and other persons in the room remained there until about 10:00 a.m. At that time, the plaintiff left the assembly room, went to the office of the clerk of the court, and reported that no judge had appeared to take the roll call of jurors and assign jurors to jury panels. The plaintiff was then informed that all jurors had been excused from further jury duty that week at about 4:00 p.m. on June 7, 1978. Upon receiving this information, the plaintiff returned to the assembly room and informed the other occupants that there would be no further jury duty during the remainder of the week. The plaintiff then left the county courthouse sometime between 10:15 and 10:30 a.m., went to the place where his automobile was parked, and returned to his home. He did not report to Tinker AFB for work at any time during June 8, 1978.

6. If, upon leaving the courthouse on June 8, 1978, the plaintiff had gone directly to Tinker AFB, his traveling time would have been approximately 30 minutes. Then, at midday during the workday, he would have been entitled to take 45 minutes off for lunch.

7. It is the practice at Tinker AFB for the immediate supervisor in each work unit to mark the time cards of the employees assigned to the unit. This is customarily done sometime between 8:00 and 10 a.m. each day, as the supervisor takes the roll of the employees assigned to the unit. The time card of each employee is marked to show whether the employee is present for duty or absent on the particular day; and,

if an employee is absent, his or her time card is marked to show the reason for the absence, *e.g.*, whether the employee is on annual leave, or is absent without leave, or is absent to perform jury duty, etc. If an employee is absent to perform jury duty, the space on the employee's time card for that date is marked "JD" and a notation is also made to show that the employee is entitled to credit for 8 hours of work on that date.

8. For each of the 4 days, June 5, 6, 7, and 8, 1978, the plaintiff's immediate supervisor, assuming that the plaintiff was performing fulltime jury duty, marked the plaintiff's time card with the notation "JD" and an indication that the plaintiff was entitled to credit for 8 hours of work.

9. As of June 8, 1978, the plaintiff had a favorable balance of annual leave to his credit.

10. At 6:45 a.m. on June 9, 1978, the plaintiff reported to Tinker AFB for work as usual.

11. During the course of his rounds on the morning of June 9, 1978, for the purpose of taking the roll of employees in his unit, Mr. Perry, the plaintiff's immediate supervisor, asked the plaintiff to initial the latter's time card near the "JD" and other notations in the spaces for June 5, 6, 7, and 8, 1978. The plaintiff initialed the time card for each of the 4 days, thus verifying that he had served on jury duty fulltime each day and was entitled to credit for 8 hours of work.

12. During the initialing transaction, Mr. Perry asked the plaintiff for the certificate from the county showing that the plaintiff had served on jury duty during the 4-day period, June 5–8, 1978. The plaintiff replied that he had forgotten to bring the certificate with him.

13. The plaintiff did not say anything to Mr. Perry or to any other superior on June 9, 1978, or at any other time during the next few months, about the happenings on June 8, 1978 (see finding 5).

14. Sometime during the working day on June 9, 1978, Mr. Perry, who expected

to be absent from Tinker AFB during the following week, instructed Aubrey Bryce, who was to take over Mr. Perry's supervisory duties during Mr. Perry's absence, to remind the plaintiff on the following Monday about the necessity of turning in the certificate of service from the county, so that it could go to the payroll office along with the plaintiff's time card for the particular pay period, *i.e.*, beginning May 28, 1978, and ending June 10, 1978.

15. On Monday, June 12, 1978, Aubrey Bryce reminded the plaintiff of the need for a verification from the county relative to the plaintiff's jury service on June 5, 6, 7, and 8, 1978.

16. Tinker AFB paid the plaintiff his base pay (less any juror fee received by the plaintiff) for 32 hours of work during the 4-day period, June 5–8, 1978, on the assumption that the plaintiff had served full-time on jury duty during each of those days.

17. On several occasions after June 9, 1978, over a period of approximately 3 months, Mr. Perry requested that the plaintiff supply him with a certificate from the county showing that the plaintiff had served on jury duty during the period June 5–8, 1978.

18. (a) On July 6, 1978, the plaintiff was orally admonished for boisterous play in throwing water over the wall of a welding booth.

(b) On July 21, 1978, the plaintiff was orally admonished for leaving his work area without permission.

(c) On August 28, 1978, the plaintiff was given a reprimand for using the terms "liar" and "dumb ass" to Mr. Perry.

19. On September 12, 1978, as the plaintiff had never furnished to Mr. Perry a certification from the county relative to the plaintiff's jury service in June 1978, Mr. Perry requested security personnel at Tinker AFB to conduct an investigation into the matter. As a result of the investigation, it was learned that the plaintiff had served on jury duty during the 3-day period, June 5, 6, and 7, 1978, but that he had not performed any jury duty on June 8, 1978.

20. (a) On October 23, 1978, the plaintiff was served with a notice of proposed removal from his position with the Air Force because of his alleged "falsification of an official document" (*i.e.*, the time card entries for June 8, 1978).

(b) The plaintiff was offered an opportunity to reply, and he did reply, to the notice of proposed removal.

(c) The final decision for the Air Force in the proceeding for the proposed removal of the plaintiff was rendered on November 20, 1978, by Mr. Lindsey. Mr. Lindsey's decision said that the reasons stated in the notice of proposed removal "are fully supported by the evidence and warrant your removal from your position with the Air Force," and that the plaintiff would be removed effective November 24, 1978. Mr. Lindsey's decision to remove the plaintiff from his position was based upon a consideration of the following factors: (1) the plaintiff had falsified a document for personal gain; (2) the plaintiff's past record of having been admonished and reprimanded for infractions of the rules; (3) the emphasis at Tinker AFB on the gravity of falsifying official documents; and (4) the probability that if he (Mr. Lindsey) imposed a lesser penalty than removal in the plaintiff's case, his (Mr. Lindsey's) own head would probably roll.

(d) The plaintiff's union membership and his activities as a Union Steward were not factors in Mr. Lindsey's decision to remove the plaintiff.

21. (a) On November 27, 1978, the plaintiff appealed to the then U.S. Civil Service Commission from the removal action taken against him by Tinker AFB on November 24, 1978. In the appeal, the plaintiff asserted that the removal action "is unwarranted and is procedurally and meritoriously incorrect," and that "the agency removed me from my position for reprisal because of my Union affiliation."

(b) The Merit Systems Protection Board (the Board) having in the meantime super-

seded the Civil Service Commission with respect to appeals by government employees, the Dallas Field Office of the Board on March 29, 1979, after holding a hearing, rendered a decision on the plaintiff's appeal. The decision found that the applicable procedural requirements were met; and that "the sustained charge and the element of past disciplinary record concerned sufficiently serious matters to warrant bringing charges against the appellant [plaintiff here], and that the agency's action in removing him was not arbitrary, capricious, or unreasonable but was taken for such cause as to promote the efficiency of the service."

(c) On February 26, 1980, the plaintiff requested the Board to review the decision by the Dallas Field Office in his case.

(d) On July 9, 1980, the Board declined to accept the plaintiff's request for review, stating that such request "was not timely filed."

22. The present action followed, the complaint (then called a petition) being filed in this court's predecessor, the U.S. Court of Claims, on August 12, 1981.

23. At the time involved in this case, the authorized punishment, under the pertinent Air Force Regulation, for the deliberate falsification by a civilian employee of a material fact in connection with an official document ranged between a reprimand and removal for a first offense.