John P. MUNNELLY, Plaintiff,

v.

The UNITED STATES POSTAL SERVICE, et al., Defendants.

CV 82-0-382.

United States District Court, D. Nebraska.

Aug. 1, 1985.

M.J. Bruckner, Lincoln, Neb., Richard Burton, Miami, Fla., for plaintiff.

Lori Joan Dym, R. Andrew German, Washington, D.C., Paul Madgett, Omaha, Neb., for defendants.

## MEMORANDUM

BEAM, District Judge.

In this matter, the plaintiff, John P. Munnelly, is seeking reinstatement to his former position as Sectional Center Manager (SCM)/Postmaster of Omaha, Nebraska, and back pay. The complaint alleges that plaintiff's removal from his position as Postmaster was in violation of the Constitution and laws of the United States and was arbitrary, capricious and an abuse of discretion.

## BACKGROUND

Plaintiff was appointed Postmaster at Omaha in 1963 by the President of the United States. After a subsequent reorganization of the United States Postal Service, he became SCM/Postmaster of the Omaha Post Office. On April 21, 1982, the Nebraska Accountability and Disclosure Commission (NADC) determined that probable cause existed to believe that plaintiff had violated provisions of the Nebraska Political Accountability and Disclosure Act, *Neb.Rev.Stat.* §§ 49–1401, *et seq.* (1943). On May 20, 1982, plaintiff entered a *nolo contendere* plea to three charges under a stipulation and agreement with the NADC. The NADC made findings of three violations and ordered plaintiff to pay $1,000.00 in civil penalties for each violation, and to make restitution to the State of Nebraska.

On July 7, 1982, Robert S. Bates, District Manager of the Mid-America District of the Postal Service, issued a "Notice of Proposed Removal." The notice stated that the action was based on the following reasons:

> On April 21, 1982, the Nebraska Accountability and Disclosure Commission determined that there was probable cause to believe that while you were a member of the Omaha Public Power District (OPPD)

> Board of Directors, you acted in violation of two provisions of the Nebraska Political Accountability and Disclosure Act, 49–14,101(3) and (4), R.R.S., 1943, as follows:

> a) You claimed reimbursement and received payment from OPPD for long-distance telephone calls to Omaha, Nebraska, from June 19 to June 24, 1981, which were not for District board business. This is in violation of 49–14,101(3), R.R.S., 1943.

> b) From September, 1979 to February 3, 1982, you used OPPD funds under your official care and control, other than in accordance with prescribed constitutional, statutory and regulatory procedures, and used such funds, in violation of 49–14,101(4), R.R.S.1943, by not accounting therefor by the end of the calendar months following the months in which you incurred travel expenses for the OPPD.

> c) From March 5, 1975 to December 31, 1981, you used a telephone credit card, which was in your official care and control, issued to the OPPD by the Northwestern Bell Telephone Company other than in accordance with prescribed constitutional, statutory and regulatory procedures and used such credit card and number for personal financial gain, by charging and causing the OPPD to pay for long-distance calls which were not for OPPD business. This is in violation of 49–14,101(4), R.R.S.1943.

> On May 20, 1982, you entered a plea of no contest to all of these charges in a stipulation and agreement with the Nebraska Accountability and Disclosure Commission. The Nebraska Accountability and Disclosure Commission ordered you to pay $1,000.00 in civil penalties for each of the aforementioned violations and further ordered you to make restitution to the State of Nebraska for any monies improperly obtained.

> These events have been extensively reported and described in the news media,

including numerous publications in the *Omaha World-Herald*, and this publicity has identified you as the Postmaster of the Omaha, Nebraska Post Office.

This conduct was incompatible with your position as Sectional Center Manager and Postmaster, resulted in notoriety and adverse publicity which is prejudicial to the interest of the Postal Service, and is inconsistent with Parts 661.53 and 666.2 of the Employee and Labor Relations Manual (ELM).

The material relied on to support the reasons for this notice is attached. If you do not understand the reasons for this notice, contact J.T. Weeker, District Director, Employee & Labor Relations, Mid-America District, for further explanation.

The ELM provisions cited in the Notice of Proposed Removal provide, in pertinent part:

*661.3 Standards of Conduct*

Employees must avoid any action, whether or not specifically prohibited by this Code, which might result in or create the appearance of:

.    .    .    .    .

c.   Impeding Postal Service efficiency or economy.

.    .    .    .    .

f.   Affecting adversely the confidence of the public in the integrity of the Postal Service.

*661.5 Other Prohibited Conduct*

.    .    .    .    .

*.53 Unacceptable Conduct*

No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct, or other conduct prejudicial to the Postal Service. Conviction of a violation of any criminal statute may be grounds for disciplinary action by the Postal Service, in addition to any other penalty by or pursuant to statute.

*666.2 Behavior and Personal Habits*

Employees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service. Although

it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous and of good character and reputation.

On July 23, 1982, in a letter addressed to Thomas K. Ranft, Regional Director, Mail Processing Department, plaintiff responded to the Notice of Proposed Removal. On August 10, 1982, Ranft issued a "Letter of Decision," which determined that plaintiff should be removed from his position effective August 13, 1982. Plaintiff appealed the decision to the Step I official, Paul N. Carlin, Regional Postmaster General, by letter dated September 21, 1982. On January 3, 1983, Carlin upheld the removal. On January 17, 1983, plaintiff appealed the Step I decision by letter addressed to Postmaster General William F. Bolger, sent in care of Nancy L. George, Assistant Postmaster General, Employee Relations Department. George served as the Step II official in the appeal process and affirmed plaintiff's removal on March 3, 1983.

## DISCUSSION

■   This Court's scope of review in a case such as this is narrow. As the Eighth Circuit has stated:

> Judicial review of dismissal from federal employment is limited to a determination that the applicable procedures have been complied with, and that the dismissal was supported by substantial evidence and was not arbitrary and capricious.

*Ross v. United States Postal Service,* 664 F.2d 191, 192 (8th Cir.1981). In addition, the Court may review the administrative record for errors of law. *Id.* at 192.

### THE CONSTITUTIONAL ISSUE

Plaintiff first contends that under Article II of the Constitution defendants are without legal authority to discharge him. Plaintiff was appointed Postmaster in 1963 by the President of the United States upon the advice and consent of the United States Senate. According to plaintiff, he can be

removed only by the President or by impeachment, not by defendants. Plaintiff cites *Myers v. United States*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926), for the proposition that the President has the exclusive power of removing executive officers of the United States whom he has appointed with the advice and consent of the Senate. Plaintiff acknowledges that in the past this removal authority was delegated to the Post Office. *See McTiernan v. Gronouski*, 337 F.2d 31 (2d Cir.1964); *Hargett v. Summerfield*, 243 F.2d 29 (D.C. Cir.1957), *cert. denied*, 353 U.S. 970, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957). Plaintiff argues, however, that because under the Postal Service reorganization of 1970 the Postmaster General is no longer the head of an executive department pursuant to Article II, Section 2 of the Constitution, such authority can no longer be delegated to him.

■ Assuming plaintiff's premise to be correct, his argument still fails because he is no longer employed pursuant to a presidential appointment. Under the Postal Reorganization Act the Postal Service is expressly granted the authority to remove employees. The Act provides:

The Postal Service shall have the right
. . .

(2) . . . to suspend, demote, discharge, or take other disciplinary action against such officers and employees;

(3) to relieve officers and employees from duties because of lack of work or for other legitimate reasons.

39 U.S.C. § 1001(e)(2) and (e)(3). Plaintiff contends that this authority cannot apply to him because it was not available when he was appointed by the President. Defendants correctly point out, though, that Congress can subsequently modify the terms of a presidential appointment. *See Crenshaw v. United States*, 134 U.S. 99, 10 S.Ct. 431, 33 L.Ed. 825 (1890). Furthermore, the Supreme Court has held that Congress has the authority to discontinue a post office and when that occurs the Postmaster is effectively discharged, even if he was presidentially-appointed. *Ware v.*

*United States*, 71 U.S. 617, 4 Wall. 617, 18 L.Ed. 389 (1867).

Congress' reorganization of the Postal Service effectively eliminated plaintiff's presidentially-appointed position and established a new system under which plaintiff was employed as a Postmaster. Since, under the new system, employees may be discharged, the Postal Service does have the authority to terminate plaintiff.

## THE PROCEDURAL ISSUES

Plaintiff next alleges that certain procedural irregularities occurred in his discharge. The Postal Service has established removal and appeals procedures for non-bargaining unit employees such as plaintiff. They are set forth in Part 650 of the Postal Service's Employee and Labor Relations Manual (ELM). Plaintiff contends that these procedures were violated and that his removal is, therefore, void.

■ The first alleged irregularity is that Paul N. Carlin, Regional Postmaster General of the Central Region, acted as the Step I appeal official after participating in a meeting at which it was decided to seek plaintiff's discharge. Accepting plaintiff's assertion that an official involved in initiating an adverse action against an employee should not then hear an appeal of that action, it is, nonetheless, clear that there is no evidence that such a situation exists here. There was testimony that Mr. Carlin did participate in a meeting at which plaintiff's situation was discussed. But, plaintiff has adduced no evidence that any removal decision was reached or that Mr. Carlin directed any other official to instigate action for plaintiff's removal. The evidence indicates that Robert S. Bates, the District Manager, acted alone in initiating the removal action.

■ Part 651.54 of the ELM provides that the decision-making official in a discharge action must be higher in authority than the proposing official. The proposing official in plaintiff's case was Robert S. Bates, District Manager, Mid-America District. The decision-making official was Thomas K. Ranft, the Regional Director of

Mail Processing in the Central Region. Plaintiff contends that Mr. Ranft was not higher in authority than Mr. Bates and that Part 651.65 of the ELM was violated.

It is true that both District Managers and Regional Directors report directly to the Regional Postmaster General. The evidence clearly establishes, however, that Mr. Ranft was higher in authority than Mr. Bates. According to Mr. Bates' testimony, Mr. Ranft sometimes directed him in the performance of his duties while Mr. Bates never directed Mr. Ranft. A Regional Manager also participates in the merit raise review of a District Manager while the converse is never true. Furthermore, both Postmaster General Bolger and Stephen Moe, the postal official primarily responsible for drafting and administering the Part 650 procedures have indicated that in their view a Regional Director is higher in authority than a District Manager. Given this evidence, it did not violate Part 651.54 for Mr. Ranft to serve as the decision-making official and Mr. Bates as the proposing official.

▪ Plaintiff's final procedural argument is that it was improper for Nancy L. George, Assistant Postmaster General, Employee Relations Department, to serve as the Step II official in the appeal process because there was no written designation from the Postmaster General. Part 652.26 of the ELM provides that:

An employee or representative may appeal in writing, within 15 days after receiving the Step I decision, to the PMG or designee—with a copy to the Step I official. (Appeals are addressed to the Postmaster General, c/o the Assistant Postmaster General, Employee Relations Department, U.S. Postal Service, Washington, D.C. 20260.) Upon receipt of a copy of the appeal, the Step I official forwards the file to the APMG, Employee Relations. The case is reviewed and a written decision is usually due within 15 days of the receipt of the appeal. This decision is final.

Plaintiff argues that unless there is a written designation from the Postmaster General, he alone may render the Step II decision. Defendants contend that the 650 procedure anticipates that the APMG, Employee Relations Department, will serve as the Step II decisionmaker, and thus no written designation is required. Defendants point to three factors: (1) the procedure states that appeals are sent in care of the APMG, Employee Relations; (2) the Step I official forwards the case file to the APMG, Employee Relations; and (3) in practice, the APMG, Employee Relations, generally serves as the Step II official.

The Court is not persuaded that failure to put the designation of Ms. George in writing violates Part 652.26. The procedures do not state that the designation must be in writing and the wording of Part 652.26 puts an employee on notice that the APMG, Employee Relations, will be integrally involved in the Step II decision-making process. It would certainly be a better practice for the Postmaster General to put such designation in writing, especially if that designation is of any official other than the APMG, Employee Relations. However, plaintiff is not entitled to relief based on the nonwritten designation of Ms. George as the Step II official.

In summary, defendants followed the applicable procedures in plaintiff's removal and appeal. Accordingly, there is no basis for plaintiff's contention that procedural irregularities render his removal void.

THE ARBITRARY AND CAPRICIOUS ISSUE

Plaintiff's third major challenge to his removal is based on the nature of the charges levelled against him. In cases involving a federal employee's discharge for off-duty conduct, federal courts have generally upheld the discharge only if the conduct could be shown to affect the "efficiency of the service." *See Bonet v. United States Postal Service*, 661 F.2d 1071 (5th Cir.1981); *Wroblaski v. Hampton*, 528 F.2d 852 (7th Cir.1976); *Wathen v. United States*, 527 F.2d 1191, 208 Ct.Cl. 342 (1975). Plaintiff claims that his removal was arbitrary, capricious and an abuse of discretion because there is no nexus between his plea

of *nolo contendere* to civil charges of improper off-duty conduct and the efficiency of the Postal Service.

█ Plaintiff contends that his removal was improper because the *nolo contendere* plea cannot be used as a basis for a finding of misconduct. It may, indeed, be true that a *nolo contendere* plea is not admissible in evidence or probative of misconduct. Plaintiff's argument falls short, however, because the Postal Service's action against him was not based on the plea itself, but rather on the NADC's finding of civil violations. This distinction is analogous to the admissibility under the Federal Rules of Evidence of a judgment of conviction resulting from a *nolo* plea, while the plea itself is of no consequence. *See United States v. Williams,* 642 F.2d 136 (5th Cir. 1981); *Fed.R.Evid.* 410, 609. The Postal Service based its action not on plaintiff's *nolo contendere* plea, but on the NADC findings of civil violations.

Plaintiff also alleges that there is no nexus between his conduct and the efficiency of the Postal Service. In discharge cases involving misconduct on the job, courts generally uphold the discharge without requiring any showing of a nexus between the misconduct and efficiency. Thus, in *Book v. United States Postal Service,* 675 F.2d 158 (8th Cir.1982), the Eighth Circuit Court of Appeals upheld the discharge of a Postmaster who misappropriated $22 worth of tools and supplies. *See also Brewer v. United States Postal Service,* 647 F.2d 1093, 227 Ct.Cl. 276 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982) (postal employee discharge for falsifying another employee's time card and removing undeliverable piece of third-class mail from the post office upheld). In cases involving off-duty conduct, however, courts inquire more closely into the nexus between the misconduct and efficiency. For example, in *Young v. Hampton,* 568 F.2d 1253 (7th Cir.1977), the court refused to uphold the dismissal of an employee at an army arsenal who had been convicted of possession of a controlled substance. The court ruled that there had

been no evidence presented linking the employee's possession of the controlled substance in his home with the efficiency of the service. On the other hand, in *Giles v. United States,* 553 F.2d 647, 213 Ct.Cl. 602 (1977), the court upheld the dismissal of an Internal Revenue Service agent who had failed to file in a timely way his income tax return for three years. The agent's job was to find delinquent taxpayers and the court concluded that the agent's conduct would be bad for the IRS' morale and community respect. The court ruled that there was a sufficient nexus between the conduct and the efficiency of the service to conclude that the discharge was not arbitrary and capricious.

█ In the instant case, the conduct for which plaintiff was removed did not occur in his capacity as Postmaster. In addition, he was not convicted of any criminal wrongdoing. In discharge cases involving criminal convictions, courts often infer a nexus between the crime and the efficiency of the service. *See, e.g., Yacovone v. Bolger,* 645 F.2d 1028 (D.C.Cir.1981), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981); *Gueory v. Hampton,* 510 F.2d 1222 (D.C.Cir.1974). For these reasons, the Court must examine whether there is a nexus between plaintiff's conduct and the efficiency of the Postal Service sufficient to justify their dismissal of plaintiff.

█ The position of Postmaster is an important one. Postmasters are officials who help manage one of government's most essential services. They are in the public eye and are in a position of trust, a fact evidenced by plaintiff's original appointment by a President. They must set an example for the employees below them and responsibly represent the Postal Service with the public. The Postal Service has the right, indeed the responsibility, to hold Postmasters to a high standard of conduct. In considering whether plaintiff's conduct justified his removal, the Court should take into account the visibility and authority of his position. *See Brewer,* 647 F.2d at 1093.

The NADC found that plaintiff had committed civil violations involving financial misconduct with public power district funds. These actions call into question plaintiff's personal integrity. The amount of money involved was relatively small. However, calculated misuse of public funds in any amount raises doubts about the fitness of a Postmaster to serve. Accordingly, the Postal Service is permitted to treat this matter more seriously than some purely private conduct.

In addition, the NADC findings attracted great attention in the press. The Postal Service was concerned with the appearance of a Postmaster having been found to have misused public funds. The Postal Service's reputation is very important and it properly considered the adverse publicity resulting from plaintiff's misconduct in deciding to remove him. *See, e.g., Yacovone*, 645 F.2d at 1028; *Wathen*, 527 F.2d at 1191; *Norton v. Macy*, 417 F.2d 1161 (D.C.Cir.1969).

It was not arbitrary, capricious or an abuse of discretion for the Postal Service to discharge plaintiff. The action may stand.

In conclusion, as plaintiff has failed to prove any irregularities in his removal, his complaint must fail. The Postal Service has the constitutional and legal authority to remove a Postmaster. The Postal Service followed all applicable procedures in removing plaintiff and its action was not arbitrary, capricious or an abuse of discretion. A separate order in conformance with this memorandum shall be entered.

### ORDER

In conformance with the Memorandum entered this date,

IT IS ORDERED that plaintiff's request for reinstatement and back pay should be and hereby is denied. Judgment should be and hereby is entered in favor of defendants and against plaintiff. Plaintiff's complaint should be and hereby is dismissed, each party to bear his or its own costs.